McGHEE v GMC TRUCK & COACH DIVISION, GENERAL
MOTORS CORPORATION

Docket No. 44814. Submitted April 8, 1980, at Detroit.—Decided July
2, 1980.

Robert L. McGhee purchased a used GMC truck tractor from
GMC Truck & Coach Division, a division of General Motors
Corporation (GMC). McGhee, an experienced mechanic, was
attempting to remove the tractor's transmission for repair and
in doing so tilted the tractor's cab forward using the tractor's
cab-tilting mechanism. The cab fell from the frame to the
ground and sustained substantial damage. A subsequent inspec-
tion revealed that the cab frame had previously broken and
been repaired and that those repairs had apparently failed
prior to McGhee's purchase of the tractor. McGhee brought an
action for damages against GMC claiming breach of express
and implied warranties, fraud and negligence. The Wayne
Circuit Court, John Cozart, Jr., J., granted summary judgment
in favor of the defendant. McGhee appeals. *Held:*

1. The documents of sale of the tractor contain disclaimers of
warranty which comply with statutory requirements for such
disclaimers and therefore preclude holding the defendant liable
for any breach of implied warranties of merchantability or of
fitness for an intended purpose.

2. The salesman's statement that the tractor was in "good
condition" was a general expression of opinion, made in the

REFERENCES FOR POINTS IN HEADNOTES

[1] 67 Am Jur 2d, Sales §§ 461, 463, 465, 468, 469.
Implied warranty of fitness for particular purpose as including
fitness for ordinary use. 83 ALR3d 656.
What are "merchantable" goods within meaning of UCC § 2-314
dealing with implied warranty of merchantability. 83 ALR3d 694.
[2] 67 Am Jur 2d, Sales §§ 434, 435, 440, 443 *et seq.*
What constitutes "affirmation of fact" giving rise to express war-
ranty under UCC § 2-313(1)(2). 94 ALR3d 729.
[3] 37 Am Jur 2d, Fraud and Deceit §§ 12 *et seq.,* 177 *et seq.,* 432 *et
seq.*
[4] 67 Am Jur 2d, Sales § 734 *et seq.*

sale of a used machine to a knowledgeable buyer, and did not create any express warranty.

3. The plaintiff in his deposition testimony indicated only two representations by defendant's salesman, regarding the tractor's transmission and its load-pulling capacity. His testimony also indicated that both of the representations were correct. The plaintiff is bound by his testimony. Therefore, the plaintiff failed to make out a case of fraud.

4. The complaint failed to state a cause of action for negligence, because the relationship between the parties was contractual and there was no allegation of personal injury or damage to property other than the subject goods; that is, the tractor itself. The plaintiff's rights are limited to those provided by the Uniform Commercial Code.

Affirmed.

1. SALES — WARRANTIES — IMPLIED WARRANTIES — CONTRACTS — STATUTES.

   Warranties of merchantability and fitness for a buyer's intended use arise by implication but may be negated by contrary contractual terms which meet specific statutory requirements (MCL 440.2316[2], [3]; MSA 19.2316[2], [3]).

2. SALES — SALESMAN'S REPRESENTATIONS — WARRANTIES — EXPRESS WARRANTIES.

   The general expression of a salesman that a machine is in "good condition", in the sale of a used machine to a knowledgeable buyer, does not create an express warranty.

3. FRAUD — ELEMENTS OF FRAUD.

   The general rule is that to constitute actionable fraud it must appear: (1) that the defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the plaintiff; (5) that the plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

4. NEGLIGENCE — PLEADING — CAUSE OF ACTION — SALE OF GOODS.

   A complaint arising from the malfunction of purchased goods does not state a cause of action for negligence where the foundation of the relationship between the parties is contractual and there is no allegation of personal injury or damage to property other than the subject goods themselves; the buyer's

rights in such a case are limited to those provided by the Uniform Commercial Code.

*Ross, Soloy & Kochansky,* for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Jonathan N. Wayman),* for defendant.

Before: DANHOF, C.J., and CYNAR and MAC-KENZIE, JJ.

DANHOF, C.J. This action arose out of the plaintiff's 1974 purchase of a used 1969 model GMC truck tractor from the defendant. The defendant had summary judgment on all counts of the complaint.

The incident that precipitated suit occurred when the plaintiff, an experienced truck ˙ driver and mechanic, attempted to remove the tractor's transmission for repair shortly after the purchase. Using the tractor's mechanism designed for the purpose, he was tilting the cab forward when it toppled from the tractor frame onto the ground, sustaining substantial damage. Subsequent inspection revealed that the cab frame had broken and been repaired some time earlier. The repairs had apparently failed before the plaintiff purchased the unit. The tractor was eventually repossessed, repaired and sold by the defendant for $7,000, $2,000 less than the price the plaintiff had paid for it.

The plaintiff claimed that he was damaged in the following particulars:

"A. Plaintiff expended considerable time and money in attempting to repair the tractor.
"B. Plaintiff lost a lucrative hauling contract due to his inability to get a truck, and lost considerable profits.

"C. Plaintiff has been put out of the trucking business and will continue to sustain loss of profit.

"D. Plaintiff has lost the use of his down payment and is incurring interest expenses on the unpaid balance of the tractor.

"E. Plaintiff's truck sustained severe damages which has *[sic]* required and will further require money for its repair."

Compensatory and exemplary relief was demanded in the amount of $750,000.

Count I of the complaint alleged that defendant breached an "express warranty" created by GMC's media advertising and its salesman's statements that he had examined the unit, particularly the engine, and found it to be in "good condition". Count II, entitled "implied warranty", asserted that the plaintiff had relied on the skill of the defendant's salesman to select a unit suitable for the plaintiff's intended purpose, which was the hauling of construction debris, thus giving rise to an implied warranty of fitness. This count claims that the physical defects, including mechanical difficulties, in the tractor rendered it unfit for the plaintiff's uses. The complaint contained no reference to the documents by which the sale was made.

In response, the defendant relied on the sale documents, including a "retail order form" and an "installment sale contract". The order form, in the nature of an offer to purchase, described the tractor and set forth the price upon which the plaintiff and the salesman had agreed. It was stamped on its face with the proviso "SOLD (AS IS)" in letters approximately one-fourth inch tall. On the reverse side, "additional terms and conditions" included the following, printed in red ink:

"9. There are no express warranties, made by the Seller herein, on the vehicle or chassis described on the face hereof except that in the case of a new vehicle or chassis the printed General Motors new vehicle warrant delivered to Purchaser with such vehicle or chassis shall apply and the same is hereby made a part hereof as though fully set forth herein. In case of a used vehicle or chassis, the applicability of an existing manufacturer's warranty thereon, if any, shall be determined solely by the terms of such warranty.

"10. Any used motor vehicle sold to Purchaser by Seller under this Order is sold at the time of delivery by Seller without any guarantee or warranty, expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, as to its condition or the condition of any part thereof except as may be otherwise specifically provided in writing on the face of this Order or in a separate writing furnished to Purchaser by Seller."

The installment sale contract indicated that the plaintiff paid $2,000 down on the purchase and financed the balance of the price through the defendant. The reverse side of this document contained "additional terms", most printed nine lines to the inch. In boldface print seven and one-half lines to the inch, the document provided:

"7. It is mutually understood and agreed that: (a) there is no implied warranty of merchantability, no implied warranty of fitness for a particular purpose and no implied warranty which extends beyond the description of said property on the face hereof; (b) except where the undersigned seller is also the manufacturer of said property and, as such manufacturer, issued to buyer or to a prior buyer of said property said manufacturer's separate written new product warranty in respect thereof and said warranty is in effect at the date hereof, there are no express warranties and no representations, promises or statements have been made by said seller in respect of said property unless endorsed

hereon or incorporated herein by reference hereon; but said seller's obligations under any express warranty made and evidenced as aforesaid shall continue in accordance with the terms thereof and regardless of whether said seller shall have transferred and assigned to another said seller's rights hereunder; and (c) buyer will not assert against any subsequent holder as assignee of this contract any claim or defense which the buyer may have against a manufacturer or seller other than the undersigned seller of said property or any component, accessory or part thereof."

The defendant's motion for summary judgment on Counts I and II was based on GCR 1963, 117.2(3), claiming that there existed between the parties no genuine issue as to any material fact. By stipulation of the parties, the trial court decided the motion on the depositions of the plaintiff and the defendant's salesman, in lieu of affidavits.[1] In his deposition, the plaintiff acknowledged the execution of the documents on which the defendant relied for its defense. He testified that he had understood that no warranties were made with respect to the engine or transmission of the truck, and that he had been free to try the cab tilt mechanism when he inspected the unit at the defendant's place of business.

Warranties of merchantability and fitness for a buyer's intended use arise by implication but may be negated by contrary contractual terms meeting the requirements of MCL 440.2316(2), (3); MSA 19.2316(2), (3):

"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case

[1] We observe that only the plaintiff's acceptance of this procedure made it proper to hear the motion without supporting affidavits from the defendant. *Brooks v Reed,* 93 Mich App 166; 286 NW2d 81 (1979), *Ewing v Alexander,* 93 Mich App 179; 285 NW2d 808 (1979).

of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

"(3) Notwithstanding subsection (2)

"(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

"(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

"(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade."

The documents that embody the agreement in this case meet the statutory requirements and therefore operate to preclude liability for breach of any implied warranty. We also observe that the plaintiff's freedom to inspect the tractor, including the tilt cab, precludes his recovery under his implied warranty claim.

The express warranty claim apparently relies on the defendant's salesman's statements that the unit was in "good condition". In the sale of a used machine to a knowledgeable buyer, this general expression of opinion cannot be held to create any express warranty.

Count IV of the complaint was entitled "fraud and deceit", and alleged that the statements and advertisements upon which the plaintiff relied for

his warranty claim were known to be false and were made by the defendant in order to induce the plaintiff to purchase the tractor. Like the motion for summary judgment on Counts I and II, the defendant's motion on this count was brought under GCR 1963, 117.2(3) and relied on the depositions of the plaintiff and the salesman.

" 'The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.' " *Michael v Jones,* 333 Mich 476, 479; 53 NW2d 342 (1952).

The deposition of the defendant's salesman indicates the defendant did not advertise the qualities of its used trucks, but merely listed them for sale in trade publications. The plaintiff's deposition indicates only two representations by the salesman: That the tractor's engine compression was satisfactory and that it had the capacity to pull the load the plaintiff meant to haul. The plaintiff admitted at various points in his deposition that both representations proved to be correct, in testimony that varied from his complaint:

"Q If I understand your testimony, the real heart of the problem here was the transmission. That was the heart of the problem of the vehicle from your standpoint?

"A *[the plaintiff]* That was it.

"Q And plus whatever it was that caused the cab to go?

"A At this point I'm not arguing about the transmission or any other part of the tractor. I'm arguing about the frame of the tractor.

"When he said that it wasn't guaranteed, he would'nt repair the transmission, I have nothing to say because I understands this.

"But when the cab broke, that is the problem right there. I don't care nothing about the engine. If the engine had went out, I would have did the same thing—had it fixed."

"Q So [the salesman] talked about its capacity?

"A Right .

"Q Did you have any problems with its capacity?

"A Yes, because the transmission wouldn't stay in gear and the clutch was slipping.

"Q Well, but in terms of being able to haul a certain weight—

"A (Interposing) It would have been able.

"Q It would have been able?

"A Yes, if it wasn't for the transmission, sure. Yes, it would with no problems.

"Q Now, I believe you said earlier that in buying a truck, naturally you look at the engine, you look at the transmission—

"A (Interposing) You run the engine, you drive the truck around, you check the transmission. If it is permitted, you will take the truck out on the highway and pull some loads with it. But a number of times you are not allowed because they don't have insurance to cover it."

"If the tractor had lasted, even if the cab hadn't broken, the transmission meant nothing. Like I say, I'm a mechanic, and most work I can do myself. If the cab hadn't broke, today I would be in good shape, because that engine in that truck was good. I am a General Motors man, period. I am a General Motors man. That's all I owned is General Motors, and that is the main reason I had this, because I was looking for something from General Motors because they give better service."

The plaintiff's testimony is binding on him. *Stefan v White,* 76 Mich App 654; 257 NW2d 206 (1977).

We conclude that summary judgment was proper under GCR 1963, 117.2(3) on Counts I, II and IV of the complaint. The plaintiff, an experienced truck mechanic, understood no warranties to have been made as to the running parts of the tractor. He was in a position to be undeceived, if such a term may be used, by the salesman's comment that the truck was in "good condition". Neither the defendant nor the plaintiff discovered the defective cab mounting before the sale. They so structured the terms of the sale as to lay the risk of hidden mechanical defects on the plaintiff, who admittedly understood this to be the case. While perhaps unusual, and certainly surprising to the plaintiff, the hidden defect in the cab is of the same nature as the worn transmission, which the plaintiff understood was his own risk. There is no showing of fraud or breach of warranty that would justify proceeding to trial in this matter.

Count III of the complaint, "negligence", asserted that the defendant was liable to the plaintiff for shortcomings in the following particulars:

"A. In affirmatively stating that the tractor was capable of hauling loads.

"B. In failing to advise and warn Plaintiff of the tractors defects known to Defendant.

"C. In failing to adequately inspect the said tractor prior to its sale to Plaintiff.

"D. In failing to apprise and warn Plaintiff that this tractor had sustained defects from previous users to such an extent that the frame had to be welded to give it stability."

On this count, summary judgment was granted under the terms of GCR 1963, 117.2(1), failure to

state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of the complaint.

We agree that no cause of action is stated in the complaint, where the foundation of the relationship between the parties is contractual and no personal injury or damage to property other than the subject goods themselves is alleged. While there is some disagreement among courts on this point, we believe that the better view is expressed in *S M Wilson & Co v Smith International, Inc,* 587 F2d 1363, 1376 (CA 9, 1978):

> "Where the suit is between a non-performance seller and an aggrieved buyer and the injury consists of damage to the goods themselves and the costs of repair of such damage or a loss of profits that the deal had been expected to yield to the buyer, it would be sensible to limit the buyer's rights to those provided by the Uniform Commercial Code. See Keeton, *Torts, Annual Survey of Texas Law,* 25 SW L J 1, 5 (1971); Franklin, *When Worlds Collide: Liability Theories and Disclaimers in Defective-Product Cases,* 18 Stan L Rev 974, 996-97, 1012-14 (1966). To treat such a breach as an accident is to confuse disappointment with disaster. Whether the complaint is cast in terms of strict liability in tort or negligence should make no difference."

The sound reasoning that underlies this position was set forth in *Mid-Continent Aircraft Corp v Curry County Spraying Service, Inc,* 572 SW2d 308, 312 (Tex, 1978), in which a used airplane failed and crashed without injury to its pilot:

> "The nature of the loss resulting from damage that a defective product has caused to itself has received the attention of several commentators. Dean Page Keeton writes:
> " 'A distinction should be made between the type of "dangerous condition" that causes damage only to the

product itself and the type that is dangerous to other property or persons. A hazardous product that has harmed something or someone can be labeled as part of the accident problem; tort law seeks to protect against this type of harm through allocation of risk. In contrast, a damaging event that harms only the product should be treated as irrelevant to policy considerations directing liability placement in tort. Consequently, if a defect causes damage limited solely to the property, recovery should be available, if at all, on a contract-warranty theory.'

"The Uniform Commercial Code was adopted by the Legislature as a comprehensive and integrated act to facilitate the continued expansion of commercial practices. * * * For sales of products the above purpose is carried out by Article 2 of the Code, which supplies a complete framework of rights and remedies for transacting parties. In light of the Code's scope and purpose, its terms should not be nullified by applying strict liability when the parties have contracted otherwise. Such an expansion of strict liability would frustrate the Code's purposes of codifying the law of commercial transactions by displacing its applicability in all cases where the sale of faulty products is involved. Some losses resulting from product transactions are best covered by contract liability under the Code."

This reasoning is persuasive. Summary judgment was properly granted.

Affirmed. Costs to appellee.