**N. FELDMAN & SON, LTD., Plaintiff,**

v.

**CHECKER MOTORS CORP. and General Motors Corp., Defendants.**

No. 81 Civ. 4502 (KTD).

United States District Court,
S.D. New York.

April 18, 1983.

Parker Chapin Flattau & Klimpl, New York City, for plaintiff; Barry J. Brett, Michael D. Friedman, New York City, of counsel.

Walter, Conston, Schurtman & Gumpel, P.C., New York City, for defendant Checker Motors Corp.; William Schurtman, Peter Kober, New York City, of counsel.

Weil Gotshal & Manges, New York City, for defendant General Motors Corp.; Kevin P. Hughes, David N. Lawrence, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendant, Checker Motors Corporation ("Checker"), moves herein to strike plaintiff's demand for a jury trial and appeals from two rulings by Magistrate Bernikow regarding the extension of the September 30, 1982 discovery cutoff date. Defendant, General Motors Corporation ("GM"), moves herein for summary judgment. I will consider and determine each of these motions and Checker's appeal separately below.

## BACKGROUND

On July 21, 1981, plaintiff, N. Feldman & Sons, Ltd. ("Feldman"), an Israeli importer and distributor of agricultural, construction, and automotive equipment, brought this action against defendants Checker, a manufacturer of taxicabs, and GM, a manufacturer of diesel engines.

The plaintiff's allegations are based, in part, on its July 20, 1979 agreement with Checker whereby Checker agreed to supply Feldman with taxicabs equipped with diesel engines. Pursuant to an earlier agreement between Checker and GM, GM agreed to supply the diesel engines for installation in these taxicabs. In 1979, plaintiff purchased 18 taxicabs from Checker that were equipped with GM diesel engines. Plaintiff now contends that because these taxicabs and their engines were defective both defendants should be held liable. The complaint asserts claims of breach of contract, breach of express and implied warranties, fraud, negligence, strict liability in tort, and conspiracy. The complaint seeks millions of dollars in compensatory and punitive damages and demands a jury trial of all issues.

Checker and GM filed separate answers to plaintiff's complaint. Checker asserted various affirmative defenses and counterclaims including an affirmative defense that under paragraph 19(6) of the July 20, 1979 agreement, Feldman had waived a jury trial against Checker. GM asserted that it had no dealings with plaintiff, and therefore could not be held liable to Feldman. Checker subsequently filed a crossclaim against GM, seeking reimbursement, indemnity, and contribution with respect to any damages that Feldman might recover against Checker by reason of the alleged defects in the GM engines. As of this date, all parties have engaged in extensive discovery proceedings.

## A. MOTION TO STRIKE PLAINTIFF'S JURY DEMAND

Checker moves to strike plaintiff's demand for a jury trial. Checker contends that plaintiff contractually waived its right to a jury trial in paragraph 19(6) of their July 20, 1979 agreement, which provides:

Checker and Dealer both acknowledge and agree that any controversy which may arise under this agreement or the relationship established hereby would be based upon difficult and complicated issues, and therefore, the parties agree that any law suit growing out of any such controversy will be tried in a court of competent jurisdiction by a judge sitting without a jury.

In support of its motion, Checker notes that plaintiff's complaint both relies on this written agreement and seeks to enforce its terms. Therefore, Checker argues, plaintiff also should be bound by the contractual waiver of a jury.

Checker further asserts that plaintiff knowingly and voluntarily consented to

waive a jury trial when, after years of negotiations and correspondence, Feldman signed the agreement which visibly and expressly provided for this waiver. Plaintiff contends, however, that it was not represented by counsel at the time of the contract signing, and that this lack of representation along with the "boilerplate" nature of the jury trial waiver provision, render the waiver unenforceable.

I find plaintiff's position unpersuasive. Although the right to trial by jury is constitutionally guaranteed, an individual may knowingly and intentionally waive this right. *See National Equipment Rental Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977); *see also Seligson v. Plum Tree, Inc.,* 361 F.Supp. 748, 758 (E.D.Pa.1973); *Northwest Airlines, Inc. v. Air Line Pilots Assoc. Int'l,* 373 F.2d 136, 142 (8th Cir.1967); *Van Leyden v. 360 East 55th Street Corp.,* 39 F.Supp. 879 (S.D.N.Y.1941). When the purported waiver exists in a contract signed prior to the contemplation of litigation, the party seeking to enforce it must demonstrate that the consent was both voluntary and informed. *See National Equipment Rental Ltd. v. Hendrix,* 565 F.2d at 258; *Dreiling v. Peugeot Motors of America, Inc.,* 539 F.Supp. 402, 403 (D.Colo.1982). Checker has met this burden. The waiver provision is clearly visible and located directly above the signatures of the contracting parties. Although unrepresented at the time of contract signing, plaintiff does not fit into the category of individuals with "no real choice" but to sign the waiver provision. *See, e.g., National Equipment Rental Ltd. v. Hendrix,* 565 F.2d at 258. This agreement was the result of years of negotiation between the parties. Moreover, there is evidence that plaintiff had previously been a party to a similar agreement with Checker containing the same jury waiver provision. I therefore find that plaintiff knowingly and willingly waived its right to a jury trial. Checker's motion to strike plaintiff's demand for a jury trial, therefore, is granted.

**B. APPEAL FROM RULINGS OF MAGISTRATE BERNIKOW**

Checker appeals from Magistrate Bernikow's October 5, 1982 rulings (1) extending the discovery cutoff date in order to allow plaintiff to take oral depositions in Israel; and (2) denying defendants' application pursuant to rule 16(a) of the Local Rules of Civil Procedure, Southern District of New York, that plaintiff be required to pay in advance the expenses and a reasonable counsel fee for one attorney representing each defendant at these depositions.

Checker argues that it would be perfectly feasible and a lot cheaper for plaintiff to bring its four or five witnesses to New York to testify at trial, and that plaintiff's request for an extension to take these depositions is clearly untimely because plaintiff must have known from the inception of this action that it would require such testimony to prove its case. Furthermore, Checker contends that Magistrate Bernikow "committed clear error" in denying advance payment of defendants' fees and expenses because, absent special circumstances, prepayment of such fees and expenses in this District normally is required. Plaintiff, on the other hand, contends that Magistrate Bernikow exercised his discretion in making these determinations and that absent a finding that these rulings were "clearly erroneous or contrary to law," they should not be disturbed. I agree with the plaintiff and decline to overturn Magistrate Bernikow's rulings.

Magistrates have broad discretion regarding the completion of pretrial discovery. *See Minichello v. Greyhound Lines, Inc.,* No. 81 Civ. 3916 (S.D.N.Y. May 19, 1982). Magistrate Bernikow's decision to extend the discovery cutoff date is clearly within his discretion and has not been shown to be "clearly erroneous or contrary to law."

In the same manner, the Magistrate's decision to deny the prepayment of defendants' fees and expenses is within his discretion. Rule 16(a) does not mandate an order of advance payment of an adversary's expenses for attendance at a deposition

more than 100 miles from the courthouse, but merely provides the court with authorization to do so if the court should deem it proper. By merely citing cases in this District in which a court has chosen to exercise its discretion to the contrary, defendant has failed to meet its burden of proving the Magistrate's ruling in this instance was "clearly erroneous." Checker's appeal from Magistrate Bernikow's October 5, 1982 rulings is therefore without merit, and those rulings are in all respects affirmed.

## C. MOTION FOR SUMMARY JUDGMENT

Defendant GM moves for summary judgment. Fed.R.Civ.P. 56.[1] GM contends that it had no dealings whatsoever with plaintiff, and on the basis of undisputed facts cannot be held liable under any theory of liability as a matter of law. I will consider separately GM's challenge to each of the six counts asserted against it.

### (i) *Breach of Express Warranty*

GM contends that because it had no contact with Feldman it could not have made any representations upon which plaintiff could have relied in its purchase of Checker taxicabs. Plaintiff, however, asserts reliance by way of alleged representations made by GM to Checker, who thereafter made express warranties to plaintiff. These representations concerned engine tests allegedly done by defendants. These tests, Feldman was told, showed that the engines performed satisfactorily.

■ A party can be held liable for its representations if the representations were a "part of the basis of the bargain." *See* Mich.Comp.Laws Ann. § 440.1313.[2] Feldman argues that the representations noted above formed part of the bargain's basis. Plaintiff alleges that representations made by GM to Checker were in turn related to

Feldman during the contract negotiation process. If GM made such representations, it could reasonably forsee that its representations would form the basis of any bargain struck by Checker. Therefore, GM is not entitled as a matter of law to summary judgment. Further material factual questions must be resolved before this Court can determine whether the requisite reliance alleged by plaintiff actually occurred in this case.

### (ii) *Breach of Implied Warranty of Merchantability*

GM contends that Feldman received no implied warranties from it. In addition, both defendants assert that all implied warranties were specifically and conspicuously disclaimed (1) by GM in its contract with Checker; and (2) by Checker in its separate agreement with Feldman. Plaintiff argues, however, that GM cannot avoid warranty liability by virtue of its contractual disclaimer, or because of the lack of privity. In support of this proposition, plaintiff argues that a manufacturer under Michigan law cannot disclaim implied warranties running to a user who was not a party to the contract.

■ Plaintiff misinterprets the applicable law. Unfortunately, Michigan courts use the term "warranty liability" in discussing two very different bases of liability. The first flows from the Uniform Commercial Code's ("UCC") sales' provisions; the second originates in the judicially developed product liability in tort.

> This entire field of law, which developed through adaptation and analogy to the law of torts and contracts has been plagued by the labels of these analogies and their appurtenant historical impeditions. Indeed, it might be helpful if we abandoned the continued use in this context of our present and misleading termi-

---

1. On January 24, 1983, Checker joined by letter in GM's motion for summary judgment with respect to plaintiff's claims of strict liability in tort, negligence, and conspiracy. Except where I have indicated explicitly otherwise, references, discussion, and holdings herein concern both GM and Checker's motions for summary judgment.

2. GM asserts that Michigan law governs this case because both the agreement between Checker and Feldman and the agreement between GM and Checker so provide. Because plaintiff does not contest this premise in its memorandum in opposition to defendants' motion for summary judgment, I will accept GM's assertion as true.

nology of warranty and representation, express and implied, and strict liability in tort, and simply refer to the manufacturer's liability by the neutral term "product liability."

*Cova v. Harley Davidson Motor Co.,* 26 Mich.App. 602, 182 N.W.2d 800, 807 (1970) (footnotes omitted). Warranty liability under the sales' provisions can be disclaimed validly, *see* Mich.Comp.Laws Ann. § 440.- 2316,[3] product liability cannot.[4]

▮ The concept of "privity" raised as a defense by GM has its present source in the UCC. The UCC provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale . . . ." Mich.Comp.Laws Ann. § 440.2314. This section apparently restricts the ability to resort to an implied warranty theory to the parties to the sales' contract. The warranties' reach, however, is expanded somewhat by Mich.Comp.Laws Ann. § 440.2318 which provides:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of the buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Thus, any implied warranties made by GM would extend no further than to Checker, the only party to contract with GM in the instant case. Furthermore, only economic losses and not personal injuries are claimed by plaintiff. Accordingly, GM's motion for summary judgment on plaintiff's implied warranty count is granted.

▮ On the other hand, it is clear that the sale by Checker to Feldman could result in an implied warranty running to Feldman. Nonetheless, Checker argues that it is entitled to summary judgment because it validly disclaimed all such warranties. In

at least two circumstances, however, a contractual disclaimer provision may be invalid. First, a provision may have been unconscionably imposed on the plaintiff. This requires a review of the relationship and precontract conduct of the parties. Insufficient facts have been established to allow resolution of this issue on a summary judgment motion. More relevant herein is the second exception. The UCC provides that in certain circumstances a limitation or disclaimer of warranties will be ignored. This occurs when whatever limited remedies that are provided by the contract are, loosely speaking, no remedy at all. In the words of the statute, when the contractual remedies "fail of [their] essential purpose, remedy may be had as provided [generally by the UCC]." Mich.Comp.Laws Ann. § 440.- 2719(2). The disclaimer provision can be found invalid, therefore, and the plaintiff could obtain relief on its implied warranty theory. The extent to which the contractual remedies "failed of their essential purpose" requires the development of and an examination of the full trial record. Accordingly, Checker's motion for summary judgment on the implied warranty count is denied.

(iii) *Negligence and Strict Liability in Tort*

▮ The development of products liability law in Michigan has been consistent and impressive. *See, e.g., Southgate Community v. Westside,* 399 Mich. 72, 247 N.W.2d 884 (1976); *Piercefield v. Remington Arms Co.,* 375 Mich. 85, 133 N.W.2d 129 (1965); *Spence v. Three Rivers Supply,* 353 Mich. 120, 90 N.W.2d 873 (1958). To establish successfully such liability the plaintiff must show "(a) the defect of manufacture upon which he relies, and (b) injury or damage caused by or resulting from such defect." *Piercefield v. Remington Arms,* 133 N.W.2d at 134. The "injury or damage" referred to in "(b)," defendants argue, must be more than mere economic loss. In support, de-

---

3. The exclusion also must be written and conspicuous, and the word "merchantability" must be stated expressly in the disclaimer provision to exclude the warranty of merchantability. Mich.Comp.Laws Ann. § 440.2316. Feldman

has not asserted that the disclaimer does not meet this aspect of the statute.

4. I will discuss products' liability in the next section.

**316**

fendants cite *McGhee v. GMC Truck & Coach Division,* 98 Mich.App. 495, 296 N.W.2d 286 (1980), in which the court held "that no cause of action is stated in the complaint, where the foundation of the relationship between the parties is contractual and no personal injury or damage to property other than the subject goods themselves is alleged." *Id.* 296 N.W.2d at 291. In such a case, the buyer is relegated to the remedies provided by the UCC. *Id.*

■ As I previously explained, however, products liability law in Michigan does not have its genesis in the UCC. The remedies and restrictions are judicially created. In *McGhee,* the defendant was not a manufacturer and the theory of liability was breach of warranty not products' liability. The *McGhee* court relegated the plaintiff solely to its contractual remedies because the policies behind Michigan's products liability law were inapplicable. In the instant case, GM is the engine's manufacturer and, as such, the policies behind potentially holding GM liable are implicated. In short, the manufacturer can be held liable for damages resulting to the reasonably foreseeable end user for defects causing economic or personal injury. Michigan makes no distinction between economic and personal injury in such circumstances. *See, e.g., Cova v. Harley Davidson Motor Co.,* 26 Mich.App. 602, 182 N.W.2d 800 (1970) (suit by commercial entity plaintiff for only economic losses upheld under products liability theory); *see also Gauthier v. Mayo,* 77 Mich.App. 513, 258 N.W.2d 748 (1977) (citing *Cova* in upholding consumer's suit for economic losses). Accordingly, there is no legal foundation for granting defendants summary judgment on the products' liability count.

### (iv) *Fraud, Concealment, and Conspiracy to Conceal*

GM correctly argues that to constitute actionable fraud under Michigan law, a material misrepresentation must have been made by defendant and plaintiff must have relied on that representation. Defendant asserts that the lack of contact between itself and Feldman precludes any finding of misrepresentation or reliance. *See McGhee,* 296 N.W.2d at 290.

■ As I noted above, however, plaintiff has alleged that it relied on representations made by GM and related to it by Checker concerning the satisfactory test results and performance of the diesel engine. *See supra* section (C)(i). Moreover, the fact that Feldman did not know that GM was the alleged originator of these representations does not bar liability.

> [W]here a party makes false representations to another with the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving him, that third party can maintain a tort action against the party making the false statements for the damages resulting from the fraud.

*D.H. Cormack v. American Underwriters Corp.,* 94 Mich.App. 379, 288 N.W.2d 634, 637 (1979). Thus, these issues of whether there was the requisite intent, whether representations were made, and whether they were relied upon, cannot be resolved on the present facts and must await trial.

■ To establish fraudulent concealment the plaintiff must demonstrate that there was an obligation to disclose. *See Borman's, Inc. v. Lake State Development Co.,* 60 Mich.App. 175, 230 N.W.2d 363, 369 (1980). Such an obligation can be inferred from the close contractual relationships between the three parties, and further because of the evident foreseeability that GM's allegedly fraudulent non-disclosure would injure Feldman. *Compare Sullivan v. Ulrich,* 326 Mich. 218, 40 N.W.2d 126, 131–32 (1949); *with D.H. Cormack, supra. See also Borman's, Inc.,* (court in dicta leaves open possibility of fraudulent concealment suit by a non-contracting party).

Finally, GM argues that there is no cause of action for civil conspiracy to conceal under Michigan law. In *Roche v. Blair,* 305 Mich. 608, 9 N.W.2d 861 (1943), the court held that "conspiracy without any actionable wrongs being done thereunder, ordinarily cannot be the subject of a civil action." *Id.* 9 N.W.2d at 864 (citation omitted). This subsequently has been interpreted, however, to mean that should plaintiff properly prove the elements of the separate and actionable tort of fraud or fraudulent conceal-

ment, recovery may be had under Michigan law for civil conspiracy. *See Earp v. City of Detroit,* 16 Mich.App. 271, 167 N.W.2d 841, 845 (1969).

For the foregoing reasons, Checker's motion for summary judgment is denied in all respects. GM's motion for summary judgment on the implied warranty count is granted; but its motion in all other respects is denied.[5] In addition, Checker's motion to strike plaintiff's jury demand is granted, and Magistrate Bernikow's rulings are upheld.

SO ORDERED.

---

**5.** Feldman also appears to have moved informally for summary judgment on certain issues such as the issue of the validity of the disclaimers. *See* Plaintiff's Memorandum of Law in Opposition to Summary Judgment at 41. The unresolved factual issues that I have discussed above make summary judgment inappropriate for either party. Accordingly, to the extent that Feldman has so moved, its motion is denied.