GREAT AMERICAN INSURANCE COMPANY v PATY'S, INC

Docket No. 88654. Submitted June 17, 1986, at Lansing. Decided
September 9, 1986. Leave to appeal applied for.

Keith Douglas purchased on June 1, 1979, from Paty's, Inc., a
combine which was designed, manufactured, assembled, tested
and distributed by Massey-Ferguson, Inc. The combine was
warranted by Massey-Ferguson to the first retail purchaser to
be free of defects in material and workmanship for a period of
one full crop-related season plus the remainder of any partial
season if purchased in mid-season. The warranty was in lieu of
any other warranty, express or implied. On July 30, 1981, the
combine caught fire while being operated due to a break in a
hydraulic line. Great American Insurance Company, insurer of
the combine under a policy secured by Douglas, settled the
insurance claim filed by Douglas for $40,764 and became subro-
gated to any claims Douglas might have arising out of the
damage to the combine. Great American filed a complaint in
Ingham Circuit Court against Paty's, Inc., and Massey-Fergu-
son, Inc., alleging negligent design, manufacture and testing of
the combine and breach of warranties of merchantability and
fitness for a particular purpose. Defendants moved for sum-
mary judgment on the basis that, since contractual relation-
ships existed between Douglas and defendants, an action for
negligence did not lie and that the express warranty precluded
recovery on the basis of the breach of any alleged implied
warranties of merchantability and fitness for a particular pur-
pose. The trial court, Thomas L. Brown, J., granted defendants'
motions for summary judgment. Plaintiff appealed.

The Court of Appeals held:

The warranty of Massey-Ferguson which extended to Douglas
created a contractual relationship between Massey-Ferguson
and Douglas. The sale of the combine by Paty's, Inc., to Douglas
clearly created a contractual relationship between Paty's, Inc.,
and Douglas. Because of the existence of the contractual rela-

REFERENCES

Am Jur 2d, Products Liability §§ 6, 450-527.

Unconscionability, under UCC § 2-302 or § 2-719(3), of disclaimer of
warranties or limitation or exclusion of damages in contract
subject to UCC Article II "Sales". 38 ALR4th 25.

tionship and the fact that the only damages being sought were related to the combine itself, recovery was not available on a negligence theory. Further, since the express warranty was clearly in lieu of any implied warranty, recovery on a breach of implied warranty theory is precluded. Accordingly, the trial court properly granted defendant's motions for summary judgment.

Affirmed.

1. NEGLIGENCE — PLEADING — CAUSE OF ACTION — SALE OF GOODS.
   A complaint arising from the malfunction of purchased goods does not state a cause of action for negligence where the foundation of the relationship between the parties is contractual and there is no allegation of personal injury or damage to property other than the subject goods themselves; the buyer's rights in such a case are limited to those provided in the Uniform Commercial Code.

2. CONTRACTS — WARRANTIES — PRODUCT DEFECTS — UNIFORM COMMERCIAL CODE.
   There exists a contractual relationship between the manufacturer of a product and a person who purchases the product from an independent retailer of that product where the manufacturer has extended to such retail purchaser an express warranty on the parts and workmanship of the product; accordingly, the methods of recovery for defects in the product itself where the defect has caused no personal injury or damage to other property are limited to those provided in the Uniform Commercial Code.

*Johnson, Shefferly, McCarrol & Moesta, P.C.* (by *Reginald S. Johnson*), for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Dennis A. Rhodes* and *Gary J. Weston*), for Paty's, Inc.

*Clark, Klein & Beaumont* (by *James E. Baiers*), for Massey-Ferguson, Inc.

Before: SHEPHERD, P.J., and J. H. GILLIS and MacKENZIE, JJ.

PER CURIAM. On December 16, 1982, plaintiff,

Great American Insurance Company, as subrogee of Keith Douglas, filed a complaint alleging negligence and breach of warranty in an action for damages which resulted when a combine owned by Douglas caught fire. Motions for summary judgment were subsequently filed by defendants, Massey-Ferguson, Inc., and Paty's, Inc., for failure to state a claim upon which relief could be granted. The lower court issued an order granting summary judgment for both defendants on October 24, 1985, from which plaintiff appeals as of right.

Plaintiff alleged in its complaint that on June 1, 1979, Keith Douglas purchased a new Massey-Ferguson diesel combine from Paty's, Inc., in Okemos, Michigan. The combine had been designed, manufactured, assembled, tested, and distributed by defendant Massey-Ferguson. On July 30, 1981, Keith Douglas was operating the combine in a wheat field when it caught fire due to a break in a hydraulic line near a control valve. Douglas was insured by the plaintiff and received $40,764 in settlement of his claim, while plaintiff was assigned the right to bring an action for damages arising from the fire. The complaint did not allege any injury to person or property other than the combine itself.

Count I of the complaint contained allegations that the defendants were negligent in various aspects of designing, manufacturing and testing the combine. Count II claimed that the defendants had warranted that the combine was fit for the purpose intended and that it was of merchantable quality. The complaint further alleged that the combine was defective and that as a result of the defects it was destroyed by fire.

The documentary evidence established that defendant Massey-Ferguson warranted that its new agricultural equipment would be free from defects

in material and workmanship at the time of delivery to the first retail purchaser. The warranty was valid for one full crop-related season, plus the remainder of a partial season if the equipment was purchased mid-season. A brochure which Massey-Ferguson dealers were instructed to give to their customers stated:

> EXCLUSIVE EFFECT OF WARRANTY AND LIMITATION OF LIABILITY
>
> THIS WARRANTY IS IN LIEU OF ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PURPOSE OR OTHER REPRESENTATIONS, WARRANTIES OR CONDITIONS EXPRESS OR IMPLIED.
>
> The remedies of the Owner set forth herein are exclusive. The Company neither assumes nor authorizes any person to assume for it any other obligation or liability in connection with the sale of covered machines.
>
> Correction of defects in the manner and for the applicable period of time provided above shall constitute fulfillment of all responsibilities of the Company to the Owner and the Company shall not be liable for negligence, under contract or in any other manner with respect to such machines. IN NO EVENT SHALL THE OWNER BE ENTITLED TO RECOVER FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES SUCH AS BUT NOT LIMITED TO, LOSS OF CROPS, LOSS OF PROFITS OR REVENUE, OTHER COMMERCIAL LOSSES, INCONVENIENCE OR COST OF RENTAL OR REPLACEMENT EQUIPMENT.

The deposition testimony revealed that Mr. Douglas was aware of the fact that his combine was warranted for one year, but he did not remember receiving the brochure nor how he learned of the warranty. The evidence also established that Paty's, Inc., was an independent dealer and was not a legal representative or agent of Massey-Ferguson and that Paty's had no right or authority to as-

sume or create obligations of any kind on behalf of Massey-Ferguson.

In its ruling on the defendants' motions for summary judgment, the trial court found a contractual relationship between Douglas and both defendants and on that basis held that no action for negligence could lie where the only damage was to the goods subject to the contract. The court further ruled that the express warranty would exclude finding any cause of action for breach of implied warranties. Therefore, summary judgment in favor of both defendants was granted, giving rise to the instant appeal.

The question which we are asked to decide is whether the trial court erred in applying to the facts of the instant case the rule announced in *McGhee v GMC Truck & Coach Division, General Motors Corp*, 98 Mich App 495; 296 NW2d 286 (1980). The plaintiff in *McGhee* brought suit to recover for property damage which occurred to a truck-tractor he had purchased from the defendant. Among other grounds, plaintiff alleged a negligence theory against the defendant. A motion for summary judgment raised by the defendant was granted by the trial court. This Court affirmed based on the following reasoning:

> We agree that no cause of action is stated in the complaint, where the foundation of the relationship between the parties is contractual and no personal injury or damage to property other than the subject goods themselves is alleged. While there is some disagreement among courts on this point, we believe that the better view is expressed in *S M Wilson & Co v Smith International, Inc*, 587 F2d 1363, 1376 (CA 9, 1978):
>
> "Where the suit is between a non-performance seller and an aggrieved buyer and the injury consists of damage to the goods themselves and the

costs of repair of such damage or a loss of profits that the deal had been expected to yield to the buyer, it would be sensible to limit the buyer's rights to those provided by the Uniform Commercial Code. See Keeton, *Torts, Annual Survey of Texas Law,* 25 SW L J 1, 5 (1971); Franklin, *When Worlds Collide: Liability Theories and Disclaimers in Defective-Product Cases,* 18 Stan L Rev 974, 996-97, 1012-14 (1966). To treat such a breach as an accident is to confuse disappointment with disaster. Whether the complaint is cast in terms of strict liability in tort or negligence should make no difference." [98 Mich App 505.]

The Court also cited language from a Texas decision as persuasive:

"The nature of the loss resulting from damage that a defective product has caused to itself has received the attention of several commentators. Dean Page Keeton writes:

" 'A distinction should be made between the type of "dangerous condition" that causes damage only to the product itself and the type that is dangerous to other property or persons. A hazardous product that has harmed something or someone can be labeled as part of the accident problem; tort law seeks to protect against this type of harm through allocation of risk. In contrast, a damaging event that harms only the product should be treated as irrelevant to policy considerations directing liability placement in tort. Consequently, if a defect causes damage limited solely to the property, recovery should be available, if at all, on a contract-warranty theory.'

"The Uniform Commercial Code was adopted by the Legislature as a comprehensive and integrated act to facilitate the continued expansion of commercial practices. . . . For sales of products the above purpose is carried out by Article 2 of the Code, which supplies a complete framework of rights and remedies for transacting parties. In light of the Code's scope and purpose, its terms

should not be nullified by applying strict liability when the parties have contracted otherwise. Such an expansion of strict liability would frustrate the Code's purposes of codifying the law of commercial transactions by displacing its applicability in all cases where the sale of faulty products is involved. Some losses resulting from product transactions are best covered by contract liability under the Code." [98 Mich App 505-506, quoting *Mid Continental Aircraft Corp v Curry County Spraying Service, Inc,* 572 SW2d 308 (Tex, 1978).]

However, the rule stated in *McGhee* was distinguished in a later decision of this Court, *Auto-Owners Ins Co v Chrysler Corp,* 129 Mich App 38; 341 NW2d 223 (1983). In *Auto-Owners,* the plaintiff's subrogors purchased a used motor home from the Sheller-Globe Corporation. Sheller-Globe had manufactured the body of the motor home and had attached it to the chassis, which had been manufactured by Chrysler Corporation, with whom plaintiff's subrogors had no contract. When the motor home suffered fire damage as a result of a fuel feed system malfunction, suit was brought against defendant Chrysler Corporation on theories of negligence, strict liability, and breach of express and implied warranties. The trial court granted defendant's motion for summary judgment as to the negligence and strict liability counts on the basis of the rule stated in *McGhee.* This Court reversed, stating:

The rational behind this [the *McGhee* Court's] holding is that it would be unfair to allow a contracting party to nullify the terms of the UCC where the only injury is to the property purchased and is caused by the condition of that property. This rationale fails when there is no contractual relationship between the parties. It thus appears that the UCC has no relevancy in a case, such as

> the instant case, in which a consumer brings a claim against a manufacturer for damage to its product which the consumer purchased from someone other than the manufacturer. [129 Mich App 42.]

Noting that the instant action involves a remote manufacturer rather than an immediate seller, plaintiff argues that the reasoning used by the *Auto-Owners* Court to distinguish *McGhee* is equally applicable here. Defendant, on the other hand, contends that the instant case differs from *Auto-Owners* in that an express warranty covering defects in material and workmanship was provided by defendant to plaintiff's subrogor, thus establishing a "contractual relationship" between the parties as contemplated in *McGhee.*

We agree with the defendant. Unlike *Auto-Owners,* where the buyer and manufacturer had no contact whatsoever, the defendant here bound itself directly to the plaintiff's subrogor by offering an express warranty on the parts and workmanship of the combine to the first retail buyer. The warranty was obviously offered in an effort to induce the sale to buyers such as Mr. Douglas, and the costs associated with the warranty were presumably built into the price of the combine. If the fire which damaged the combine had occurred within the warranty's limitations period, Mr. Douglas could have insisted upon his rights under the warranty directly against the defendant and could have enforced those rights under the law. Under such circumstances, we must conclude that a "contractual relationship" existed directly between plaintiff's subrogor and the defendant.

Furthermore, the dissent in *Auto-Owners* makes a strong argument for the proposition that a contractual relationship is unnecessary to invoke the

rule stated in *McGhee*. The dissent points out that the majority opinion is based upon the premise that a buyer cannot, under the ucc, proceed against a remote seller. However, under Michigan law, vertical privity is not required even where the damages at issue consist solely of economic losses, i.e., damage to the subject goods themselves. While the ucc takes no official position on the issue of vertical privity, see Official UCC Comment to § 2-318; 1 Hawkland, A Transactional Guide to the Uniform Commercial Code, § 1.1905, p 87, the practice commentary to § 2-318 found at 21 MCLA 363 notes that the Michigan decisions on the question of privity are not affected by the Code. The Michigan cases which have considered the question have held that it is unnecessary to establish vertical privity, even where the loss is solely economic. *Cova v Harley-Davidson Motor Co,* 26 Mich App 602; 182 NW2d 800 (1970); *Piercefield v Remington Arms Co, Inc,* 375 Mich 85; 133 NW2d 129 (1965). The dissenting opinion in *Auto-Owners* concludes that, even where the defendant is a remote seller with whom the consumer has had no contract, the rule set out in *McGhee* is applicable. 129 Mich App 44 (DANHOF, C.J., dissenting). In light of our previous conclusion that a contractual relationship did in fact exist between our defendant and the plaintiff's subrogor, it is unnecessary to decide whether the reasoning of the *Auto-Owners* dissent should be adopted. We bring attention to this interesting question only to bring proper focus to the issue before us.[1]

However, since we do find the *McGhee* rule to be applicable, we conclude that the trial court's deci-

[1] Judge GILLIS acknowledges that he voted with the majority in *Auto-Owners Ins Co v Chrysler Corp,* 129 Mich App 38; 341 NW2d 223 (1983), but would reconsider his position on this issue were it necessary to resolve the instant dispute.

sion to grant summary judgment in favor of defendant Massey-Ferguson for failure to state a claim upon which relief can be granted was proper. As to defendant Paty's, Inc., we note that plaintiff's brief does not specifically address the propriety of the trial court's order as it applied to Paty's and that the arguments contained therein appear to be directed only to Massey-Ferguson. In any event, it cannot be disputed that a contractual relationship existed between Paty's, as the immediate seller, and plaintiff's subrogor, and thus summary judgment was clearly appropriate under the authority of *McGhee.*

In light of our resolution of this case, the remaining issues raised in the plaintiff's brief need not be discussed.

Affirmed.