A C HOYLE COMPANY v SPERRY RAND CORPORATION

Docket No. 64037. Submitted May 20, 1983, at Houghton.—Decided
    August 23, 1983. Leave to appeal denied, 418 Mich 964.

    A. C. Hoyle Company entered into a contract with Bethlehem
    Steel Corporation to supply certain deck machinery for oil
    tankers being built by Bethlehem. Hoyle contracted with the
    Vickers Division of Sperry Rand Corporation for the design,
    manufacture and delivery of hydraulic motors to be incorpo-
    rated into the deck machinery being constructed by Hoyle.
    Sperry failed to deliver the hydraulic motors according to the
    contracted delivery schedule and the motors, when delivered
    and installed, failed to conform to the agreed-upon specifica-
    tions. A. C. Hoyle Company brought an action in Dickinson
    Circuit Court against Sperry Rand Corporation seeking dam-
    ages arising out of the failure to deliver the motors in accor-
    dance with the delivery schedule and the failure to deliver
    motors meeting the contract specifications. Plaintiff's complaint
    alleged breach of contract, breach of express and implied
    warranties, and negligence. Defendant moved for partial sum-
    mary judgment as to the negligence count, arguing that plain-
    tiff, as to the negligence count, failed to state a cause of action
    upon which relief could be granted. V. Robert Payant, J.,
    granted defendant's motion for partial summary judgment.
    Plaintiff appeals. *Held:*

        Since the claim arose out of a contractual relationship and
    there was no allegation of personal injury or damage to any
    property other than the subject goods themselves, plaintiff
    failed to state a claim sounding in negligence.
        Affirmed.

NEGLIGENCE — PLEADING — CAUSE OF ACTION.

    A complaint for damages arising out of the failure of a seller of
    goods to deliver the goods according to the contracted delivery
    schedule and the failure of the goods, when delivered and

REFERENCES FOR POINTS IN HEADNOTE
17 Am Jur 2d, Contracts §§ 441 *et seq.,* 521.
22 Am Jur 2d, Damages § 270.
61A Am Jur 2d, Pleading § 71.

installed, to conform to the agreed-upon specifications does not state a cause of action for negligence where the foundation of the relationship between the parties is contractual and there is no allegation of personal injury or damage to property other than the subject goods themselves.

*Petrucelli & Petrucelli* (by *Vincent R. Petrucelli)*, for plaintiff.

*Bodman, Longley & Dahling* (by *Walter O. Koch* and *Thomas Van Dusen)*, for defendant.

Before: CYNAR, P.J., and J. H. GILLIS and WAHLS, JJ.

PER CURIAM. Plaintiff, A. C. Hoyle Company, appeals as of right from an April 13, 1982, order of partial summary judgment against it pursuant to GCR 1963, 117.2(1), failure to state a claim upon which relief can be granted.

In its complaint plaintiff alleged that it had entered into a contract with Bethlehem Steel Corporation to supply deck machinery for four oceanfaring oil tankers which Bethlehem was building. The machinery to be supplied by plaintiff was designed to be hydraulically powered.

Plaintiff contracted with Vickers, a division of the defendant corporation, for the design, manufacture, and delivery of 60 hydraulic motors to be incorporated into the system powering the deck machinery. Defendant, however, failed to deliver the motors according to the contracted delivery schedule, and the motors, when delivered and installed, failed to conform to the agreed-upon specifications. Defendant admitted both these allegations.

Plaintiff alleged that it was not able to cancel the contract with defendant because the deck machinery was designed solely for the application of

the defendant's motors and the urgencies of Bethlehem Steel's sailing dates did not allow for the substitution of other hydraulic motors.

Plaintiff further alleged:

"[I]n an effort to remedy Sperry-Vickers' breach of contract and honor its contract with Bethlehem Steel Corporation, Hoyle was required to expend considerable time and expense in correcting the defective Sperry-Vickers split-rise motors; was required to make substantial engineering revisions; was required in incur additional costs from subcontractors; was required to secure substitute subcontractors at a greater expense and cost to complete portions of the contract and that these damages amounted to a sum of money in the excess of one hundred ninety thousand ($190,000.00) dollars and were a direct proximate cause of Sperry-Vickers' breach of contract."

Plaintiff did not allege that the motors were themselves damaged by virtue of their defect, nor did plaintiff allege that the motors caused physical injury to persons or other property.

In its complaint plaintiff sought damages under three theories: breach of contract (Count I), breach of express and implied warranties (Count II) and negligence (Count III). Defendant moved for partial summary judgment as to the negligence count. In that count, plaintiff alleged:

"2. The defendant owed a duty to plaintiff to properly design the split-rise MHT hydraulic motors, to provide correct technical data to plaintiff, to inform plaintiff of any known defects in its equipment, to properly manufacture the MHT motors, to use materials free of any defects of any nature, and the duty to maintain adequate control.

"3. The defendant, in violation of these duties owed plaintiff, did negligently design the split-rise MHT hydraulic motors, did negligently provide erroneous tech-

nical data to plaintiff, which caused plaintiff to incorporate Sperry-Vickers' equipment in the winch units, were negligent in failing to inform plaintiff of any known defects in its equipment, prior to the failure of same alleged herein, and additionally were negligent in failing to properly manufacture the MHT motors, were negligent in using defective materials and were negligent in failing to maintain adequate quality control."

The trial court, in reliance on *McGhee v General Motors Corp,* 98 Mich App 495; 296 NW2d 286 (1980), granted defendant's motion and dismissed the negligence count.

In *McGhee,* plaintiff purchased a used truck tractor from defendant. While plaintiff was working on the tractor's transmission, the cab fell from the frame to the ground and sustained substantial damage. Plaintiff brought an action for damages against defendant, claiming breach of express and implied warranties, fraud, and negligence. This Court affirmed the trial court's entry of summary judgment dismissing all counts.

Regarding dismissal of the negligence count, the Court held that "no cause of action is stated in the complaint, where the foundation of the relationship between the parties is contractual and no personal injury or damage to property other than the subject goods themselves is alleged". In so holding, the Court adopted the position expressed in *S M Wilson & Co v Smith International, Inc,* 587 F2d 1363, 1376 (CA 9, 1978):

" 'Where the suit between a non-performance seller and an aggrieved buyer and the injury consists of damage to the goods themselves and the costs of repair of such damage or a loss of profits that the deal had been expected to yield to the buyer, it would be sensible to limit the buyer's rights to those provided by the Uniform Commercial Code. See Keeton, *Torts, Annual*

*Survey of Texas Law,* 25 SW L J 1, 5 (1971); Franklin, *When Worlds Collide: Liability Theories and Disclaimers In Defective-Product Cases,* 18 Stan L Rev 974, 996-997, 1012-1014 (1966). To treat such a breach as an accident is to confuse disappointment with disaster. Whether the complaint is cast in terms of strict liability in tort or negligence should make no difference.'" *McGhee, supra,* p 505.

The instant case is an even more compelling one for application of the rule in *McGhee* than was *McGhee* itself. Underlying the tort doctrine of products liability is the policy of allocating the risk of dangerous or unsafe products to the manufacturer rather than the consumer. *McGhee, supra,* pp 505-506, quoting *Mid-Continental Aircraft v Curry County Spraying Service, Inc,* 572 SW2d 308, 312 (Tex, 1978). See also *Cova v Harley Davidson Motor Co,* 26 Mich App 602, 615; 182 NW2d 800 (1970):

"The 'product liability' of the manufacturer, and the corresponding right of the consumer, is simply the liability which * * * the law imposes on a manufacturer in favor of a consumer for loss suffered by reason of a defective product attributable to that manufacturer." (Footnote omitted.)

Products liability law also serves as a means to avoid the privity requirement in contract actions, see *Cova, supra,* pp 604-605, and as an inducement to manufacturers to design and produce safe products, Calabresi and Hirschoff, *Toward a Test for Strict Liability in Torts,* 81 Yale L J 1055, 1068 (1972).

None of these policies would be served in the instant case, which involves contracting parties of relatively equal economic strength who, in a commercial setting, bargain for the specifications of

the product. Under such circumstances, it was held in *Kaiser Steel Corp v Westinghouse Electric Corp,* 55 Cal App 3d 737; 127 Cal Rptr 838 (1976), that the plaintiff buyer was not entitled to bring an action in tort. The court's reasoning is persuasive and applicable to the facts of this case:

" '[T]he adequacy of sales law controls the use of tort law, since the need to resort to tort law depends upon the extent to which sales law does or does not afford protection to a disappointed buyer.' (Comment, *Manufacturer's Responsibility for Defective Products: Continuing Controversy Over the Law To Be Applied,* 54 Cal L Rev 1681, 1690-1691; Kessler, *The Protection of the Consumer Under Modern Sales Law,* 74 Yale L J 262.)

\*  \*  \*

"The case at bench presents a situation in which the statutory principles of sales warranties work well so that to apply the tort doctrines of products liability will displace the statutory law rather than bring out its full flavor. The plaintiff-buyer and defendant-seller are commercial enterprises contracting from positions of relatively equal bargaining power for a product designed to negotiable specifications and not furnished off the shelf. Privity is no artificial barrier to recovery. Since the specifications of the product are negotiable, the tort doctrine of products liability as between the buyer and seller is no inducement to design and produce a safe product. Since the manufacturer and buyer have bargained in a commercial setting not only for the product but also for the measure and mode of reimbursement for defects in the product, any societal interest in loss shifting is absent. Whether the loss is thrust initially upon the manufacturer or customer, it is ultimately passed along as a cost of doing business included in the price of the products of one or the other and thus spread over a broad commercial stream. (Calabresi and Hirschoff, *Toward a Test for Strict Liability in Torts,* 81 Yale L J 1055, 1070-1074.)" 55 Cal App 3d 747-748 (footnotes omitted).

Plaintiff argues, however, that the Court in *McGhee* ignored prior Michigan decisions recognizing a cause of action for negligence against a manufacturer of a negligently designed or manufactured product that causes economic loss as opposed to personal injury or property damage. See *Spence v Three Rivers Builders & Masonary Supply, Inc,* 353 Mich 120; 90 NW2d 873 (1958); *Cova v Harley Davidson Motor Co, supra.*

In neither *Cova* nor *Spence,* however, was there a contractual relationship between the plaintiff and the manufacturer of the defective product, nor was the Uniform Commercial Code, with its specific provisions detailing the rights and liabilities of the parties to a commercial sales contract, applicable. Accordingly, these decisions do not conflict with the holding in, or undermine the rationale of, *McGhee.*

Affirmed.