CONSUMERS POWER COMPANY, a Michigan corporation, and Bechtel Power Corporation, a Nevada corporation, Plaintiffs,

v.

MISSISSIPPI VALLEY STRUCTURAL STEEL COMPANY, a Delaware corporation; which prior to January 1, 1979 was named Debron Corporation, a Delaware corporation; and which since January 1, 1982 has been named Bristol Steel Corporation, a Delaware corporation; Bristol Steel & Iron Works, Inc., a Virginia corporation; J.W. Rex Company, a Pennsylvania corporation; which since March 18, 1979 has been named Rexmet Corporation, a Pennsylvania corporation; and Southern Bolt & Fastener Corporation, a Louisiana corporation, Defendants/Third-Party Plaintiffs,

v.

BABCOCK AND WILCOX COMPANY, a Delaware corporation, Third-Party Defendant,

and

SOUTHERN BOLT & FASTENER CORP., a Louisiana corporation,

v.

SUPERIOR HEAT TREATING COMPANY, a Texas corporation, Third-Party Defendant.

Civ. A. No. 82CV–60296–AA.

United States District Court, E.D. Michigan, S.D.

May 6, 1986.

On Motion for Rehearing June 25, 1986.

Michael A. Thoists, Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, Detroit, Mich., for Consumers and Bechtel.

Richard C. Marsh, Clark, Klein & Beaumont, Detroit, Mich., for Bechtel also.

Daniel L. Garan, Thomas F. Myers, Garan, Lucow, Miller, Seward, Cooper & Becker, P.C., Detroit, Mich., for Mississippi Valley.

Roger F. Wardle, Edward D. Plato, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, Mich., for Rex.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Consumers Power Company (Consumers) and Bechtel Power Corporation (Bechtel) (plaintiffs), have brought this action against Mississippi Valley Structural Steel Company/Debron Corporation/Bristol Steel Corporation/Bristol Steel & Iron Works, Inc. (MVSS), J.W. Rex Company/Rexmet Corporation (Rex), and Southern Bolt & Fastener Corporation (Southern Bolt) (defendants), alleging that the defendants supplied them defective reactor vessel anchor bolts for use at the Midland nuclear power plant. The plaintiffs' first amended complaint (complaint) claims that several of the bolts cracked, while some of the others were excessively hard and not in conformance with the procurement documents. Plaintiffs bring suit for these claimed defects under contract and tort theories; the latter claims being for negligence and breach of implied warranty in tort.

Consumers is the owner of the two-unit nuclear power plant located in Midland, Michigan. It contracted with Bechtel to design and construct this plant. In 1974, Bechtel entered into a contract with MVSS for the purchase of the reactor vessel anchor bolts and other materials for both units of the plant. Bechtel issued a purchase order for the goods to be provided. To meet the terms of its contract with Bechtel, MVSS subcontracted with Southern Bolt for the manufacture and heat treating of the reactor vessel anchor bolts. Southern Bolt manufactured the bolts but subcontracted for their heat treatment with Rex (Unit # 1 bolts) and Superior Heat Treating Company (Superior) (Unit # 2 bolts).

The reactor vessel anchor bolts were manufactured and heat treated by the above-named parties. After delivery to Bechtel, the bolts were embedded into concrete as part of the reactor vessel support system. The reactor vessels were placed into position and the bolts placed under tension to hold the vessels in place. In September, 1979, one of the anchor bolts in Unit # 1 was discovered to have separated. An investigation of the other bolts revealed some others had separated, while still more were excessively hardened. The excessive hardness of these bolts made them unacceptable for the purpose of holding the reactor vessel secure.

There are several motions now before the court. MVSS, Southern Bolt, and Rex have moved for summary judgment on the plaintiffs' tort claims of negligence and breach of implied warranty in tort. Rex has also filed a second motion for summary judgment on the tort claims. Finally, MVSS, Southern Bolt, and Rex have filed motions for partial summary judgment alleging that Bechtel is not a real party in interest.

For the reasons stated below, MVSS, Southern Bolt, and Rex's motions for summary judgment on the negligence and breach of implied warranty in tort claims are granted. This renders Rex's second motion for summary judgment moot be-

cause it dismisses all claims against them in this action. Finally, MVSS, Southern Bolt, and Rex's motions for partial summary judgment to dismiss Bechtel are denied.

## MVSS, SOUTHERN BOLT, AND REX'S MOTIONS FOR SUMMARY JUDGMENT ON TORT CLAIMS

The principal issue in these motions is whether in a commercial transaction, where all of the parties are businesses, the goods are specially manufactured items, and the only damages pleaded are commercial economic losses resulting from defects in goods themselves, does the UCC govern the transaction to the exclusion of all tort remedies? The court answers this question affirmatively, as have all other Michigan courts when faced with this issue.

Commercial law, such as the UCC, has developed so that commercial problems can be solved by businesses with predictable consequences. Noncommercial losses, which are not pleaded in this case, can result in tort liability. If plaintiffs had alleged that the defective anchor bolts caused personal injury or damage to other property, they could have sued for tort damages.

The legal basis for this court's decision may be found in *McGhee v. General Motors Corp.*, 98 Mich.App. 495, 296 N.W.2d 286 (1980). In *McGhee*, the plaintiff purchased a used truck tractor from the defendant. While the plaintiff was working on the tractor's transmission, the cab fell from the frame to the ground and sustained substantial damage.

Plaintiff brought an action for damages and included a count of negligence. The negligence count was dismissed by the trial court and the dismissal affirmed by the Court of Appeals.

The Court of Appeals outlined the "economic loss" theory in its opinion:

> We agree that no cause of action is stated in the complaint, where the foundation of the relationship between the parties is contractual and no personal injury or damage to property other than the subject goods themselves is alleged.

While there is some disagreement among courts on this point, we believe that the better view is expressed in *S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363, 1376 (CA 9, 1978):

> "Where the suit is between a non-performance seller and an aggrieved buyer and the injury consists of damage to the goods themselves and the costs of repair of such damage or a loss of profits that the deal had been expected to yield to the buyer, it would be sensible to limit the buyer's rights to those provided by the Uniform Commercial Code. *See* Keeton, Torts, Annual Survey of Texas Law, 25 S.W.L.J. 1, 5 (1971) ... To treat such a breach as an accident is to confuse disappointment with disaster. Whether the complaint is cast in terms of strict liability in tort or negligence should make no difference."

The sound reasoning that underlies this position was set forth in *Mid-Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308, 312 (Tex., 1978), in which a used airplane failed and crashed without injury to its pilot:

> "The nature of the loss resulting from damage that a defective product has caused to itself has received the attention of several commentators. Dean Page Keeton writes:

> " 'A distinction should be made between the type of "dangerous condition" that causes damage only to the product itself and the type that is dangerous to other property or persons. A hazardous product that has harmed something or someone can be labeled as part of the accident problem; tort law seeks to protect against this type of harm through allocation of risk. In contrast, a damaging event that harms only the product should be treated as irrelevant to policy considerations directing liability placement in tort. Consequently, if a defect causes damage limited solely to the property, recovery should be available, if at all, on a contract-warranty theory.'

"The Uniform Commercial Code was adopted by the Legislature as a comprehensive and integrated act to facilitate the continued expansion of commercial practices. * * * For sales of products the above purpose is carried out by Article 2 of the Code, which supplies a complete framework of rights and remedies for transacting parties. In light of the Code's scope and purpose, its terms should not be nullified by applying strict liability when the parties have contracted otherwise. Such an expansion of strict liability would frustrate the Code's purposes of codifying the law of commercial transactions by displacing its applicability in all cases where the sale of faulty products is involved. Some losses resulting from product transactions are best covered by contract liability under the Code."

■ Applying *McGhee* to the facts before it, the court finds Dean Keeton's distinction between types of dangerous conditions equally applicable here. Tort law seeks only to protect against harms to other property and persons; not damage to the goods themselves. The former is part of the accident problem and tort law seeks to allocate these risks. However, as Dean Keeton concludes, "if a defect causes damage limited solely to property, recovery should be available, if at all, on a contract-warranty theory."

While *McGhee* involved a suit by a consumer plaintiff against a manufacturer, the Michigan Court of Appeals has applied the same theory to suits between commercial parties. *A.C. Hoyle v. Sperry Rand Corp.*, 128 Mich.App. 557, 340 N.W.2d 326 (1983). *Hoyle* involved a suit by the plaintiff company against a manufacturer contractor who supplied defective hydraulically powered motors. Plaintiff did not allege that the motors themselves were damaged by the defect, nor that the motors caused physical injury to persons or other property. The court affirmed the dismissal of the negligence count of the complaint citing *McGhee* and saying:

The instant case is an even more compelling one for application of the rule in *McGhee* than was *McGhee* itself. Underlying the tort doctrine of products liability is the policy of allocating the risk of dangerous or unsafe products to the manufacturer rather than the consumer.... Products liability law also serves as a means to avoid the privity requirement in contract actions, ... and as an inducement to manufacturers to design and produce safe products....

None of these policies would be served in the instant case, which involves contracting parties of relatively equal economic strength who, in a commercial setting, bargain for the specifications of the product. Under such circumstances, it was held in *Kaiser Steel Corp. v. Westinghouse Electric Corp.*, 55 Cal.App.3d 737; 127 Cal.Rptr. 838 (1976), that the plaintiff buyer was not entitled to bring an action in tort. The court's reasoning is persuasive and applicable to the facts of this case:

" '[T]he adequacy of sales law controls the use of tort law, since the need to resort to tort law depends upon the extent to which sales law does or does not afford protection to a disappointed buyer' ...

"The case at bench presents a situation in which the statutory principles of sales warranties work well so that to apply the tort doctrines of products liability will displace the statutory law rather than bring out its full flavor. The plaintiff-buyer and defendant-seller are commercial enterprises contracting from positions of relatively equal bargaining power for a product designed to negotiable specifications and not furnished off the shelf. Privity is no artificial barrier to recovery. Since the specifications of the product are negotiable, the tort doctrine of products liability as between the buyer and seller is no inducement to design and produce a safe product. Since the manufacturer and buyer have bargained in a commercial setting not only for the product but also for the measure and mode of reimbursement for defects in

the product, any societal interest in loss shifting is absent. Whether the loss is thrust initially upon the manufacturer or customer, it is ultimately passed along as a cost of doing business included in the price of the products of one or the other and thus spread over a broad commercial stream."

*Hoyle* at 561–62, 340 N.W.2d 326.

As the *Hoyle* court noted, the tort doctrine of products liability is based on the policy of allocating the risk of dangerous or unsafe products to the manufacturer rather than the consumer. Where *all* parties involved in the manufacture and utilization of the product are commercial businesses, this rationale disappears. Placing the burden of the loss on any particular business will only result in that business raising its prices to pass these costs along to consumers. The courts should have no role in deciding which business should raise its prices, especially in light of the parties' ability to allocate those risks among themselves.

Moreover, the parties to this case are all of substantial economic strength and bargained in a commercial setting for the product. Since the specifications of the reactor vessel anchor bolts were fixed by the plaintiffs, the tort doctrine of products liability offers no inducement to design a safe product. Contractual provisions on the measure and mode of reimbursement for defects in the reactor vessel anchor bolts show that the parties have already allocated the potential losses between themselves with no potential unfairness in the bargaining process.

The plaintiffs may have a contractual remedy in this case; they are suing MVSS for breach of express warranty, breach of contract, and breach of implied contract warranty. As noted in *Hoyle* above, the need to resort to tort remedies depends upon whether contract law provides protection to a disappointed buyer. Since plaintiffs have MVSS in contract and the law permits MVSS to vouch in its subcontractors, Southern Bolt and Rex, there is no

question that plaintiffs have an adequate remedy. *See* M.C.L.A. § 440.2607(5).

Plaintiffs contend that *McGhee* and *Hoyle* are inapplicable to this case for several reasons. First, they argue that the economic loss doctrine applies only to negligence claims and therefore their claim for breach of tort in implied warranty is unaffected by it. Next, plaintiffs claim that there should be an exception read into the economic loss theory for potentially hazardous defects. These defects have not yet caused harm to other property, or personal injuries, but could potentially do so in the future. Third, plaintiffs argue they have pleaded damage to other property and therefore the economic loss doctrine does not apply. Finally, plaintiffs state that Rex and Southern Bolt are not in privity of contract with them, while MVSS is not in privity with Consumers. Plaintiffs believe the economic loss theory cannot be applied to situations where the parties are not in privity. The court will discuss these points in the order they are set forth above.

Several other courts have applied the economic loss doctrine to strike tort claims. *Eaton Corp. v. Magnavox Co.*, 581 F.Supp. 1514 (E.D.Mich.1984); *Sylla v. Massey-Ferguson, Inc.*, No. 80–30029 (E.D.Mich. Feb. 13, 1984) (order vacating findings of special master); *Sylla v. Massey-Ferguson, Inc.*, 595 F.Supp. 590 (E.D.Mich.1984); *N. Feldman & Son, Ltd. v. Checker Motors Corp.*, 572 F.Supp. 310 (S.D.N.Y.1983) (applying Michigan law); and *Auto-Owners Insurance Co. v. Chrysler Corp.*, 129 Mich.App. 38, 341 N.W.2d 223 (1983). These opinions cast some light upon some of the points raised by plaintiffs and not discussed in *McGhee* and *Hoyle*.

First, as Judge Pratt noted in *Eaton*, the economic loss doctrine, if applicable, bars *all* tort remedies. *Eaton Corp. v. Magnavox Co.*, 581 F.Supp. at 1539. To quote from that opinion:

The Court in *McGhee* held that a plaintiff is restricted to the remedies available under the U.C.C. in attempting to recover economic losses; only damages for personal injury and damage to other

property can be recovered in tort. The Court's opinion in *McGhee* expressly involved only a claim of negligence, but its logic applies equally to other tort theories. Indeed, the Court relied on one case which did not involve a negligence claim at all, but rather involved only a claim of strict liability.

\* \* \* \* \* \*

Therefore, the only logical inference to be drawn from *McGhee* is that a plaintiff cannot recover economic losses under the theories of strict liability *or implied warranty in tort.*

*Id.* at 1538–39 (emphasis added) (citations deleted).

This disposes of the plaintiffs' contention that the economic loss theory is limited only to claims of negligence.

■ *Eaton* addresses the second issue raised by plaintiffs in this case; does potential injury to persons or property constitute noneconomic loss and thus preclude application of the economic loss theory? *Eaton Corp. v. Magnavox Co.,* 581 F.Supp. 1514. Plaintiffs argue it does, asking the court to insert a hazardous defect exception to the economic loss doctrine. Judge Pratt rejected this argument in *Eaton,* saying:

First, Eaton contends that the controllers were "safety devices" and *could have* caused injury to persons and property. This argument misses the point of *McGhee* and the cases cited therein. It was equally true for example, that the defective tractor in *McGhee* and the defective aircraft in *Mid Continent* could have caused serious personal injury. The rule of those cases is that where the defective product has not *in fact* caused injury to persons or other property, a plaintiff cannot recover economic losses under a negligence theory. This is precisely what Eaton seeks to do in the case at bar; under the authority of *McGhee,* it cannot do so.

*Id.* at 1537–38 (emphasis in original).

The court believes that Judge Pratt's view is correct and adopts it. *See also, Sylla v.*

*Massey-Ferguson, Inc.,* 595 F.Supp. at 591–92.

Plaintiffs next contend that they have pleaded damage to other property in their complaint. In paragraph 26 of the complaint, plaintiffs set forth the damages they claim to have suffered from the defective reactor vessel anchor bolts. They claim lost use of the reactor vessel support system, forced redesign and reconstruction of the reactor vessel support system, costs for prevention of potential personal injury or damage to other property, and the loss of value of the reactor vessel support system resulting from the use of the defective bolts. Plaintiffs believe that these allegations show damage to other property which takes them outside the scope of the economic loss doctrine.

■ The court finds that the claims for lost use of the reactor vessel support system and for damages caused by the reconstruction of the reactor vessel support system are pure economic losses. Injuries consisting of damage to the goods themselves, the costs of repair of such damage, or the loss of use and resultant lost profits, are economic losses and should be embraced by the provisions of the Uniform Commercial Code rather than by a separate tort theory. *McGhee v. General Motors Corp.,* 98 Mich.App. at 505, 296 N.W.2d 286. Similarly, the court believes that plaintiffs' claim of damages to the design of the reactor vessel support system are, at best, economic losses. While plaintiffs may have a property interest in the design plan, the defective bolts have caused no harm to the plan itself. It retains the same shape and form it would have had even if the bolts had been of acceptable quality. Further, the court has already rejected the plaintiffs' claims that potential harm to other property or potential personal injury are noneconomic losses. See above discussion of *Eaton Corp. v. Magnavox Co.,* 581 F.Supp. at 1537–38.

■ Finally, the court finds that the loss of value of the reactor vessel support system resulting from the use of the defective anchor bolts is also economic loss. The

court in *Sylla v. Massey-Ferguson, Inc.*, 595 F.Supp. 590 (E.D.Mich.1984) and *Sylla v. Massey-Ferguson Inc.*, No. 80–30029 (E.D.Mich. Feb. 13, 1984) [Available on WESTLAW, DCTU database] (order vacating findings of special master) was faced with an analogous situation and reached the same result.

The facts in *Sylla* were stated by the court in an unpublished opinion. Its summary is reproduced below:

> In April of 1976, plaintiff purchased a Massey-Ferguson Model 1505 tractor from EMC, Inc. [a dealer in farm equipment]. At the time of purchase, he signed a retail order form and retail installment contract and security agreement. These documents allegedly contained a limited express warranty by Massey-Ferguson [the manufacturer] and an exclusion of all implied warranties, including merchantibility and fitness for a particular purpose. These documents also allegedly disclaimed liability for special or consequential damages, including lost profits.
>
> In May of 1979, the tractor engine "seized" during operation due to a lack of oil. Apparently the oil pressure hose had developed a leak by lying on or near the engine, resulting in a loss of engine oil. The plaintiff alleges that the engine was defectively designed in that the hose was improperly routed. After extensive repairs and some delay, the tractor was restored to operating condition. Plaintiff seeks the cost of repairs and lost profits resulting from delayed and reduced crop yields.

*Sylla v. Massey-Ferguson, Inc.*, No. 80–30029 (E.D.Mich. Feb. 13, 1984), p. 2 [Available on WESTLAW, DCTU database].

The plaintiff consumer attempted to sue for negligence and breach of implied warranty in tort. The court concluded that the plaintiff had suffered only economic loss and therefore must proceed under the principles of commercial law contained in the UCC. *Id.* at 3.

Of particular importance to this case is the *Sylla* court's discussion of the crop losses alleged to have occurred. The court said:

> Plaintiff's argument that crop loss constitutes property damage is not persuasive. Any damage to the crops would constitute consequential damage based on the tractor's alleged malfunction preventing plaintiff from planting the crops. As such, any effect on the crops or crop loss would be economic and consequential because *the product did not harm the crops themselves.*

*Sylla v. Massey-Ferguson, Inc.*, 595 F.Supp. at 591 (emphasis added). While plaintiffs here argue that the lost value of the reactor vessel support system does not constitute economic loss, the court finds that the reactor vessel anchor bolts did not harm the support system themselves. Although the reactor vessel support system may be of lower economic value because of the defective bolts embedded in it, the loss incurred is still only an economic loss.

Finally, the plaintiffs object that there is no privity between them and Southern Bolt or Rex nor between Consumers and MVSS. This lack of privity, plaintiffs claim, bars the application of the economic loss doctrine and allows them to sue in tort. The court disagrees.

In *Sylla v. Massey-Ferguson*, 595 F.Supp. 590, the consumer plaintiff was not in privity with the manufacturer. Plaintiff purchased the tractor in question from a dealer in farm equipment, not the manufacturer. While there was a manufacturer's limited warranty on the tractor, this did not establish privity. Yet, the court applied the economic loss doctrine to bar the consumer plaintiff's tort claims. It said, "... reliance on privity notions to resolve this choice of law [between tort and contract] question can only serve to further blur the distinction between, and applicability of, commercial law and tort law to economic losses.... A more logical and conceptually manageable approach is to begin by considering the type of loss the plaintiff is alleging.... When a plaintiff seeks to impose liability for economic losses only, tort law concerns with product safety no longer apply, and commercial law concerns with economic expectations must govern." *Syl-*

la v. Massey Ferguson, Inc., No. 80–30029 (E.D.Mich. Feb. 13, 1984), pp. 3–4. This court agrees with the Sylla court's reasoning and finds that it applies with even more weight here.

Sylla limited a consumer's suit against a manufacturer to contract remedies. In the case before the court now, the suit is between two groups of commercial businesses, Consumers and Bechtel on one hand, and MVSS, Rex and Southern Bolt on the other. The argument to limit the parties to their contractual remedies is much stronger in the purely commercial setting than it is when a consumer's claims are involved. As McGhee and Hoyle point out, the doctrine of products liability rests on the policy of shifting losses from the consumer to the manufacturer. When all of the parties are purely commercial enterprises and of relatively equal strength, no matter which business the liability for the loss is placed on, that business will pass these costs along and consumers will ultimately pay higher prices for their goods. The law designed to define relationships among commercial persons and enacted by the legislature to create and limit liability between them, the Uniform Commercial Code, should be applied. In this situation, there is no rationale for the court to shift the loss between parties by going outside the Code.

McGhee, Hoyle, and Eaton, did not address the privity issue because the suits in those cases were between the parties to the contract. N. Feldman & Son, Ltd. v. Checker Motors Corp., 572 F.Supp. 310 (S.D.N.Y.1983) is of no persuasive value because the court misinterpreted Michigan law and held that the economic loss doctrine did not apply in suit against a manufacturer. Id. at 316. As Hoyle and Eaton have since established, this is incorrect.

In the only case holding that privity of contract was a necessary precondition for the economic loss doctrine, a split panel of the Michigan Court of Appeals found it necessary in a consumer's action against a manufacturer. Auto-Owners v. Chrysler, 129 Mich.App. 38, 341 N.W.2d 223 (1983). The consumers in that case purchased a used mobile home, the chassis of which was manufactured by Chrysler with the body manufactured and attached to the chassis by Sheller-Globe Corporation-Superior Coach Division (Sheller-Globe). The fuel feed system of the motor home malfunctioned and the home suffered fire damage. The consumers' insurance company, Auto-Owner's, paid them for the damage and sued Chrysler and Sheller-Globe as the consumers' subrogee. Thus, Auto-Owner's rights were equivalent to the consumers' rights against a manufacturer.

The majority opinion read McGhee to hold that it was "unfair to allow a contracting party to nullify the terms of the UCC where the only injury is to the property purchased and is caused by the condition of that property." Id. at 42, 341 N.W.2d 223. Thus, the majority concluded, in a case "in which a consumer brings a claim against a manufacturer for damage to its product which the consumer purchased from someone other than the manufacturer," McGhee is inapplicable if there is no privity between the parties. Id. at 42, 341 N.W.2d 223 (emphasis added). The court's holding is thus expressly limited to plaintiffs such as the consumer buyers of the mobile home.

To underline this limitation, the majority opinion cited Spence v. Three Rivers Builders & Masonry Supply, Inc., 353 Mich. 120, 90 N.W.2d 873 (1958). In Spence, the plaintiff homeowner sued the manufacturer of defective cement blocks that had been used by an independent contractor to build her house. The court allowed the homeowner to sue in tort for the damages to her property caused by the manufacturer's negligence.

The dissenting opinion in Auto-Owners focused on the availability of an alternative remedy for the plaintiffs under the UCC. Since the UCC does provide a remedy, even where a remote seller is the named defendant, the dissent would have applied McGhee to any suit by an aggrieved buyer of goods that alleges only economic loss. Id. 129 Mich.App. at 43–44, 341 N.W.2d 223. The dissent did not distinguish between suits by

consumers and those by commercial enterprises.

Comparing the majority and dissenting opinions in *Auto-Owners*, it is apparent that they disagree only over the question of whether a consumer must be in privity with a manufacturer in order for the economic loss doctrine to apply. The loss shifting rationale behind products liability law supports the majorities' conclusion that consumer's tort remedies should not be barred by the doctrine when they are not in privity with the manufacturer.

However, the *Auto-Owners* majority did not disagree with the dissent's view that, in suits by commercial enterprises against other commercial enterprises, privity was unnecessary. The fairness issue in *McGhee*, relied upon by the majority in *Auto-Owners*, is not present when all the parties to the transaction are commercial businesses. In transactions among commercial parties, one of the issues in the bargaining process is the allocation of risk of nonperformance at the time of contract.

The other cases that the plaintiffs cite in support of their argument that there must be privity for the economic loss doctrine to apply were decided prior to the adoption of the UCC or the *McGhee* decision. *See, e.g., Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 182 N.W.2d 800 (1970); *Spence v. Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich. 120, 90 N.W.2d 873 (1958). These cases are also distinguishable because they involve suits by consumers for defective products.

To summarize, the court holds that when all the parties to a transaction are commercial enterprises of relatively equal strength, have bargained for the production and treatment of specially manufactured goods, and the only damages pleaded are commercial economic losses resulting from defects in the goods themselves, then the UCC and its remedies govern the transaction. Tort remedies, such as, negligence and breach of implied warranty in tort, are unavailable to the business plaintiff.

Accordingly, MVSS, Southern Bolt, and Rex's motions for summary judgment on plaintiffs' tort claims of negligence and breach of implied warranty in tort are granted. This decision renders Rex's second motion for summary judgment moot as Rex is now dismissed from the case because the only claims against Rex are the tort claims.

MVSS, SOUTHERN BOLT, AND REX'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT TO DISMISS BECHTEL

MVSS and Rex claim that Bechtel is not a real party in interest and should be dismissed from this action. They base their claim on Bechtel's admission that it has suffered no monetary losses. Bechtel argues that, while it has been reimbursed for the costs it has incurred, it remains potentially liable for cost overruns. Moreover, it urges that it is a cost-plus contractor and should therefore be treated as a real party in interest.

Bechtel points to *Mason-Rust v. Laborers' International Union, Local 42*, 435 F.2d 939, 943 (8th Cir.1979), to support its position. *Mason-Rust* involved a suit by a general contractor against a union for engaging in forbidden strikes. The union wanted to join the U.S. Army as an indispensable party because the plaintiff contractor was engaged in a cost-plus contract where the Army repaid it for the costs of construction. The court allowed the suit to go forward without joinder of the United States saying that the contractor bore the costs of the construction until it was reimbursed by the Army and therefore was a real party in interest. *Id.* at 943. Accepting Bechtel's claim that it is a cost-plus contractor, *Mason-Rust* dictates that it be allowed to remain in the action as a real party in interest.

Defendants believe that Bechtel is an agent of Consumers and therefore not a real party in interest under the test in *Hanna Mining Co. v. Minnesota Power & Light*, 573 F.Supp. 1395, 1397–98 (D.Minn. 1983), *aff'd*, 739 F.2d 1368 (8th Cir.1984).

The question of Bechtel's agency is at least partially in dispute and this precludes summary judgment for the defendants.

Accordingly, defendants' motions for partial summary judgment as to Bechtel's status as a real party in interest are denied.

## SUMMARY

The court holds that the defendants' motions for summary judgment as to the plaintiffs' claims in negligence and breach of implied warranty in tort are granted. Defendant Rex's second motion for summary judgment on the tort claims against it is therefore moot. Defendants' motions for partial summary judgment to dismiss Bechtel from the case are denied.

SO ORDERED.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR REHEARING

This matter comes before the court on plaintiffs' motion for reconsideration of this court's Memorandum Opinion and Order of May 6, 1986. The parties having fully briefed the issues, the court finds the plaintiffs have failed to demonstrate a "palpable defect by which the Court and the parties have been misled." Local Rule 17(m). Instead, the plaintiffs have reraised the same issues which were presented before this court at the time of its earlier decision. Although this is sufficient ground to dismiss the plaintiffs' motion, the court will address the merits of the plaintiffs' motion to assist the parties in their efforts to resolve this dispute.

In their motion for reconsideration, the plaintiffs do not dispute this court's ruling that the plaintiffs have alleged only economicc losses in their complaint. Thus, they implicitly concede their tort claims against those defendants in privity with them are barred by the economic loss doctrine.

Neither do the plaintiffs challenge the underlying rationale of this court's earlier decision barring their products liability claims of breach of implied warranty and negligence, that is, that the policies behind products liability law do not apply when commercial parties are bargaining from positions of relatively equal bargaining strength, for specially manufactured goods, and have provided for the measure and mode of reimbursement for defects in the product. Memorandum Opinion and Order, pages 7–9, citing *A.C. Hoyle v. Sperry Rand Corp.*, 128 Mich.App. 557, 561–62, 340 N.W.2d 326 (1983). Fairness to the consumer by shifting the losses incurred to the manufacturer, which can raise its prices and distribute the loss over society generally, is not a consideration when the parties involved are all businesses with similar capability of spreading the loss in this fashion. The court should not intervene to reallocate the burden of these risks and choose which businesses should suffer, after the parties have already negotiated the allocation of these risks under commercial law. Instead commercial law should provide the framework by which parties decide and bargain over the allocation of these burdens.

Instead, the plaintiffs would read this court's opinion narrowly and technically; emphasizing only the issue of privity and whether the economic loss doctrine applies where the parties are not in direct contractual privity.[1] Plaintiffs rely exclusively on decisions which predate the adoption of the economic loss doctrine in Michigan. Plaintiffs look to these cases to draw implications about the need for privity in

---

1. Curiously, the plaintiffs appear to take the position that privity can be established by almost any kind of connection between the manufacturer and the buyer. Thus, plaintiffs argue privity between a manufacturer and consumer would be established if there was any type of manufacturer's warranty on a product. Plaintiffs' Brief, pages 12–14. This rule would have the effect of vastly expanding the scope of the economic loss rule to cover all sorts of consumer cases and effectively wipe out products liability remedies for consumers and others for large groups of products. Plaintiffs provide the court no means of reconciling their position on manufacturer's warranties with their argument that restrictions on tort remedies between commercial parties are inconsistent with prior case law.

actions between commercial parties where the economic loss doctrine is applied. The fallacy in the plaintiffs' arguments can be simply stated: these decisions do not examine the economic loss doctrine itself and therefore cannot speak to whether privity is a requirement for its application. Plaintiffs ignore the fact that the economic loss doctrine itself abrogated some of the remedies available under the cases they cite. To turn this around and say these cases provide the means for interpreting when the economic loss doctrine should apply is incorrect.

The only two cases which have addressed the privity requirement under the economic loss doctrine are *Sylla v. Massey-Ferguson, Inc.*, 595 F.Supp. 590 (E.D.Mich.1984) and *Auto-Owners Insurance Co. v. Chrysler Corp.*, 129 Mich.App. 38, 341 N.W.2d 223 (1983). The court discussed both of these cases at length in its earlier Memorandum Opinion and Order, pages 13–20. The court remains convinced this discussion correctly concludes that privity has not been required for the economic loss doctrine where the parties are commercial businesses of relatively equal bargaining strength, the goods are specially manufactured, and the only losses pleaded are economic losses. Plaintiffs attempt to create privity between the parties in *Sylla* on the basis of the express limited warranty between the parties prove too much, as noted in footnote 1. Similarly, the holding in *Auto-Owners* expressly states it is limited to actions by *consumers* against manufacturers. *Auto-Owners Insurance Co. v. Chrysler Corp.*, 129 Mich.App. at 42, 341 N.W.2d 223. Plaintiffs' protests aside, these are the only two cases which discuss privity under the economic loss doctrine.

Nevertheless, the court will examine again the cases which the plaintiffs cite as supporting their argument that privity is required for the application of the economic loss doctrine. Plaintiffs primarily rely on *Spence v. Three Rivers Builders Masonry Supply, Inc.*, 353 Mich. 120, 90 N.W.2d 873 (1958) and *Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 182 N.W.2d 800 (1970). As the court stated in its Memorandum Opinion and Order, pages 18–20,[2] these are cases where private individuals sued for defects in mass produced products: golf carts in *Cova* and concrete blocks in *Spence*. The court views these suits as actions by consumers to enforce their rights. None of the policies that have led the court to conclude privity is unnecessary for the application of the economic loss doctrine are implicated by the facts or logic of *Cova* and *Spence*. The parties were undoubtedly of greatly different bargaining strength, the goods and their specifications were not bargained for but instead were mass produced, loss shifting from the consumer to the manufacturer would have the beneficial effect of improving design and manufacture of the goods, and the manufacturers could more easily shift the loss over society as a whole. In light of all these factors, the court concludes the *Cova* and *Spence* decisions do not dictate any privity limitation of the economic loss doctrine.

Similarly, the other two cases which the plaintiffs cite do not support their arguments. Plaintiffs argue the dissenting opinion in *Parish v. B.F. Goodrich Co.*, 395 Mich. 271, 235 N.W.2d 570 (1975) bolsters their contention that privity should be required for the economic loss doctrine. There are several reasons why the court cannot accept this claim. First, the issue in *Parish* was, as the majority framed it:

The question is, for purposes of determining, under the borrowing statute, the applicability of Michigan's or of another state's statute of limitations, whether a product liability claim of a consumer against a manufacturer accrues in the state where the product is sold or the state where the alleged defect in the product becomes apparent, causing inju-

---

2. On page 20 of its earlier order, there is a typographical error, which was corrected in the published version of the opinion. The first sentence of the first full paragraph on page 20 should read "... were decided prior to the adoption of the UCC or the McGhee decision." The word "or" should be substituted for "and" in the uncorrected version.

ry and damage. We hold that the claim accrues when and where injury and damage are suffered.

*Id.* at 275, 235 N.W.2d 570.

The holding of the court was not concerned with the issue of privity, nor with the economic loss doctrine. Furthermore, the plaintiffs in *Parish* were the victims of a car accident caused by a tire blowout. These consumers sued the tire manufacturer under various tort theories. Thus, the suit was an action by consumers against a manufacturer, not an action between commercial parties. Finally, the opinion of a dissenting justice of the Michigan Supreme Court is not precedent which binds this court.

Finally, the plaintiffs argue that *Southgate Community School District v. West Side Construction Company*, 399 Mich. 72, 247 N.W.2d 884 (1976) supports their claim that privity is necessary for the economic loss doctrine. The issue in *Southgate* was whether the correct statute of limitations was applied by the courts below, not the economic loss doctrine and its limitations. The court there relied on *Parish* in deciding to apply the tort statute of limitations. Although the case did not involve a consumer plaintiff, the court treated the school district as if it were a consumer. *Id.* at 78, 247 N.W.2d 884. More importantly, the goods involved in the case were not specially manufactured goods, they were mass produced floor tiles. Finally, the case predates the *McGhee* and *Hoyle* decisions and cannot claim to limit them.

■ There is one other argument which the plaintiffs make that deserves consideration. Plaintiffs claim this court's distinction between suits by consumers against manufacturers and suits between commercial parties is difficult to apply and will lead to confusion. While the court doubts this to be the case, it is certainly not true here. Plaintiffs are clearly not consumers. Bechtel is one of the largest construction companies in the world, while Consumers is a sizeable utility company. There is no possibility the plaintiffs will be confused with the mobile home owners in *Auto-Owners*.

The United States Supreme Court recently issued an opinion that fully supports this court's decision in this matter. *East River Steamship Corporation v. Transamerica Delaval*, —— U.S. ——, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

Applying admiralty law, the court held that, "... a manufacturer in a *commercial* relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." *Id.* at ——, 106 S.Ct. at 2302 (footnote omitted) (emphasis added). The Supreme Court's rationale for its decision closely paralleled this court's reasoning when it said:

... When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.

The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured, the "cost of an injury and the loss of time or health may be an overwhelming misfortune," and one the person is not prepared to meet. In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured....

Society need not presume that a customer needs special protection. The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified.

Damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received "insufficient product value." ... The maintenance of product value and quality is precisely the purpose of express and implied warran-

ties. See UCC § 2–313 (express warranty), § 2–314 (implied warranty of merchantability), and § 2–315 (warranty of fitness for a particular purpose). Therefore, a claim of a nonworking product can be brought as a breach-of-warranty action. Or, if the customer prefers, it can reject the product or revoke its acceptance and sue for breach of contract. See UCC §§ 2–601, 2–608, 2–612.

Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. See UCC §§ 2–316, 2–719. In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power, we see no reason to intrude into the parties' allocation of the risk.

While giving recognition to the manufacturer's bargain, warranty law sufficiently protects the purchase by allowing it to obtain the benefit of its bargain. The expectation damages available in warranty for purely economic loss give a plaintiff the full benefit of its bargain by compensating for forgone business opportunities ...

A warranty action also has a built-in limitation on liability, whereas a tort action could subject the manufacturer to damages of an indefinite amount. The limitation in a contract action comes from the agreement of the parties and the requirement that consequential damages, such as lost profits, be a foreseeable result of that breach ...

In products-liability law, where there is a duty to the public generally, foreseeability is an inadequate brake ... Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product ...

*Id.* at —— – ——, 106 S.Ct. at 2302–2304. (footnotes and citations omitted).

This decision is highly persuasive authority.

Having carefully reconsidered the same arguments which the plaintiffs made before this court in this motion and their earlier motion, the court continues to believe its earlier decision was correct. Accordingly, the plaintiffs' motion for reconsideration is denied.

SO ORDERED.