**FREY DAIRY, a Michigan co-partnership, Plaintiff,**

v.

**A.O. SMITH HARVESTORE PRODUCTS, INC., a Delaware corporation, and Michigan Glass Lined Storage, Inc., a Michigan corporation, Defendants.**

**Civ. No. 87–CV–70734–DT.**

United States District Court, E.D. Michigan, S.D.

Feb. 17, 1988.

John Patterson, Dennis Reid, Patterson & Patterson, Sandusky, Mich., for plaintiff.

Jack Mazzara, Butzel, Keidan, Simon, Meyers & Graham, Detroit, Mich., Mark Hibbs, Hibbs, Welch & Macalpire, Mt. Clemens, Mich., for defendants.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.  Introduction

This is a products liability case.  Plaintiff operates a commercial dairy farm.  In 1980 plaintiff contracted to purchase from defendant Michigan Glass Lined Storage, Inc. (Michigan Glass) three (3) silos with related attachments (silos), manufactured by defendant A.O. Smith Harvestore Products, Inc. (A.O. Smith).

Plaintiff claims that the silos failed to operate properly, resulting in reduced milk production and lost profits.  The second amended complaint contains twelve (12) counts, of which six (6) have been voluntarily withdrawn.  Of the remaining claims, Counts II through IV allege various products liability theories of recovery, including negligent and intentional failure to warn and design defect.  Counts VI through VIII allege breach of express and implied warranties, as well as an implied warranty of fitness for a particular purpose.

A.O. Smith and Michigan Glass have moved for summary judgment on the following grounds: 1) the remaining claims are barred by the applicable limitations period, 2) the tort claims are precluded by the "economic loss doctrine", which limits plaintiff to warranty claims, if any, and 3) the implied warranties were validly disclaimed in the silo order form signed by plaintiff's agent.

Plaintiff has responded only to the statute of limitations defense.  Plaintiff says that it had no reason to suspect a problem with the silos until 1986 and therefore, the complaint, filed August 25, 1986, is well within the applicable limitations period.

For the reasons which follow, the motions will be granted.

### II.  Facts

Plaintiff operated a dairy farm in Brown City, Michigan for over thirty (30) years. In 1980, and for three (3) years thereafter, the farm was operated by Lulubell Frey, her son-in-law, David Siegers, and her son, Mike Frey.

In mid–1980 plaintiff purchased from Michigan Glass three (3) silos manufactured by A.O. Smith.  The express warranty in the purchase order provided that Michigan Glass, the seller, would replace and/or repair defective parts or workmanship in the silos for a period of 365 days, that the silos' foundations would be properly installed and that the product would be erected in strict conformance with [A.O. Smith's] specifications.  The language of the purchase order thereafter explicitly disclaimed any "other warranty, either express or implied and including a warranty of merchantability and fitness for a particular purpose."  A further clause in the purchase order stated in capital letters:

## ACKNOWLEDGEMENT AND RELIANCE

I HAVE READ AND UNDERSTOOD THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER INCLUDING THE WARRANTIES, DISCLAIMERS AND TERMS AND CONDITIONS HEREIN GIVEN TO ME EITHER BY THE MANUFACTURER OR THE SELLER.  I RELY ON NO OTHER PROMISES OR CONDITIONS AND REGARD THAT AS REASONABLE BECAUSE THESE ARE FULLY ACCEPTABLE.

Lulubell Frey signed the purchase order directly below this language. The silos were delivered and installed in May and June of 1980.

### III. Statute of Limitations

■ A.O. Smith and Michigan Glass argue that the claims for breach of express and implied warranties are barred by the four (4) year statute of limitations in Michigan's Uniform Commercial Code (UCC). The statute, M.S.A. 19.2725 [M.C.L.A. § 440.2725], provides:

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued....

(2) A cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach*. A breach of warranty occurs when tender of delivery is made, except that where a warrant [sic] explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

In the absence of a warranty as to future performance, latency of the defect is irrelevant to the commencement of the running of the statute of limitations. *See, Parish v. B.F. Goodrich Co.*, 395 Mich. 271, 282, 235 N.W.2d 570 (1975) (in the commercial setting, the purpose of s 2–725 is to commence the running of the four-year limitational period, applicable to UCC contract of sale actions, *instanter* upon tender of delivery). *See also, H. Hirschfield Sons v. Colt Indus.*, 107 Mich.App. 720, 725, 309 N.W.2d 714 (1981). Thus, the affidavits of Lulubell and Mike Frey, to the effect that they did not "suspect" the silos until 1986, six (6) years after they were placed into operation, are immaterial. Therefore, because the complaint was filed more than four (4) years after delivery and installation of the silos, plaintiff's UCC warranty claims are barred unless they fall within the exception for warranties as to future performance.

If a particular warranty extends to future performance, it must be explicitly stated and thus by definition, implied warranties do not extend to future performance. *See Centennial Ins., v. General Electric Co.*, 74 Mich.App. 169, 171–72, 253 N.W.2d 696 (1977) ("explicit" means so clearly stated or distinctly set forth as to leave no doubt as to its meaning).

The "future performance" exception must also be narrowly construed with an emphasis placed on the word "explicitly." *Centennial Ins. v. General Electric*, 74 Mich.App. at 171, 253 N.W.2d 696. Professors White and Summers have also said that the extension of the normal warranty period does not occur in the usual case, even though all warranties in a sense apply to the future performance of goods. *See* J. White & R. Summers, *Uniform Commercial Code* s 11–9, at 419 (2d ed.1980).

With respect to plaintiff's claim for breach of an express warranty, plaintiff does not indicate on which express warranty, outside of the one specifically stated in the purchase order, it relies to survive summary judgment. The express warranty contained in the purchase order clearly does not extend to future performance. Plaintiff does not point to any express warranty outside of the contract on which it might rely. In any event, the purchase order disclaims any other express warranties or promises, and plaintiff has advanced no argument why the disclaimer is invalid.

Accordingly, the UCC warranty claims are barred by the expiration of the four (4) year limitations period. M.S.A. 19.2725 [M.C.L.A. § 440.2725].

### IV. The Economic Loss Doctrine

■ A.O. Smith and Michigan Glass argue that under Michigan law, no cause of action in tort exists for damages resulting from an allegedly defective product where, as here, the foundation of the relationship between the parties was contractual and the only losses alleged are economic losses. As put by A.O. Smith:

The policy justifications for this economic loss doctrine are well-reasoned. Tort law exists to protect individuals from products that are dangerous to life

or property. When a non-hazardous product allegedly fails to perform to the customer's expectation resulting in economic loss such as lost profits, repair costs or loss of the value of the product, the protection of tort law is not necessary.

With respect to products liability claims, the Michigan Court of Appeals in *McGhee v. General Motors Corp.*, 98 Mich.App. 495, 505, 296 N.W.2d 286 (1980), adopted the following statement from *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir.1978), to express its view on the economic loss doctrine:

> Where the suit is between a non-performance seller and an aggrieved buyer and the injury consists of damage to the goods themselves and the costs of repair of such damage or a loss of profits that the deal had been expected to yield to the buyer, it would be sensible to limit the buyer's rights to those provided by the Uniform Commercial Code. See Keeton, *Torts, Annual Survey of Texas Law*, 25 SW L J 1, 5 (1971); Franklin, *When Worlds Collide: Liability Theories and Disclaimers in Defective–Product Cases*, 18 Stan.L.Rev. 974, 996–97, 1012–14 (1966). To treat such a breach as an accident is to confuse disappointment with disaster. Whether the complaint is cast in terms of strict liability in tort or negligence should make no difference.

The doctrine has been expanded to apply also to a buyer-manufacturer situation, where no contractual privity technically exists, on the ground that the economic loss doctrine, if applicable, bars *all* tort remedies. *Consumers Power v. Mississippi Valley Structural Steel*, 636 F.Supp. 1100, 1106–07 (E.D.Mich.1986). See also, *Sylla v. Massey–Ferguson Inc.*, 660 F.Supp. 1044

and 595 F.Supp. 590 (E.D.Mich.1984); *A.C. Hoyle Co. v. Sperry Rand Corp.*, 128 Mich. App. 557, 340 N.W.2d 326 (1983); *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

Accordingly, plaintiff has failed to state tort claims on which relief can be granted as a matter of law.

### V. Conclusion

Because summary judgment must be granted to both defendants on the grounds that the expiration of the statute of limitations bars the warranty claims and the economic loss doctrine bars the tort claims, there is no need to reach defendants' other arguments.

Accordingly, A.O. Smith's and Michigan Glass's motions for summary judgment are GRANTED.[*]

SO ORDERED.

---

[*] Dave Siegers's deposition testimony clearly establishes that within a few months of the installation of the silos in 1980, he suspected that they were adversely affecting the dairy herd's feed. Siegers, while not plaintiff's owner, was the manager of the dairy herd and in complete charge of plaintiff's operations. Mike Frey's deposition testimony, while somewhat less explicit, establishes that he too suspected the new silos as the cause of the difficulties being experienced with the dairy herd. Mike Frey acknowledged that he had been warned the silos would cause trouble. Lulubell Frey also acknowledged at her deposition that she thought the new silos were causing trouble. Mike Frey's and Lulubell Frey's one-sentence, conclusionary affidavits in opposition to defendants' thoroughly reasoned motions may be ignored. In summary, plaintiff knew as far back as 1980 that there was something amiss about the new silos and yet waited six (6) years to bring suit.